## GREENE v. FANKHAUSER.

(Supreme Court, Appellate Division, First Department.    March 11, 1910.)

1. LIVERY STABLE KEEPERS (§ 8*)—LIEN—LOSS—REMOVAL OF PROPERTY.

If the proprietor of a garage had a lien on an automobile kept there for storage charges and repairs, he lost the lien when he parted with possession of the automobile.

[Ed. Note.—For other cases, see Livery Stable Keepers, Cent. Dig. § 9; Dec. Dig. § 8.*]

2. ARREST (§ 63*)—IN CRIMINAL CASES—AUTHORITY TO ARREST WITHOUT WARRANT.

Where employés of a garage, after an automobile had been taken therefrom without payment of claims against the owner, took the car from a public street, with intent to force payment of the bill and deprive the owner of its use until he paid, and the proprietor with knowledge of the facts ratified and adopted the act, and refused to give up the car, so that a felony was committed, and a police officer had reason to believe that the proprietor had directed that the car be so stolen, he could arrest the proprietor without a warrant.

[Ed. Note.—For other cases, see Arrest, Cent. Dig. §§ 149, 151; Dec. Dig. § 63.*]

3. FALSE IMPRISONMENT (§ 40*)—ACTIONS—INSTRUCTIONS.

In an action for false imprisonment in arresting plaintiff for refusing to deliver up defendant's automobile which plaintiff's employés had taken from the street, and which plaintiff was holding for payment of a debt owing from defendant, though plaintiff had no lien thereon, where defendant claimed that plaintiff was guilty of a felony, it was error to refuse a charge that plaintiff had no lien upon the car and no right to retain possession of it, because defendant owed him money, though plaintiff's attor-

ney at the commencement of the trial conceded those facts, since the jury might have lost sight of such concession during the trial, and may not have fully understood that it was binding upon plaintiff, and was a correct rule of law under which plaintiff had no right to retain the car.

[Ed. Note.—For other cases, see False Imprisonment, Dec. Dig. § 40.*]

4. LARCENY (§ 3*)—INTENT.

Under Pen. Code, § 528, subd. 1, providing that a person who with the intent to deprive the owner of his property or of the use thereof takes from the owner's possession or withholds personal property is guilty of larceny, the criminal intent where one took the automobile of another from the street, and held it in a garage to enforce payment of a claim due from the owner, having no lien thereon, was the intent to deprive the owner of his property in taking it from the street, or in detaining it in the garage, and it was immaterial whether the one so taking the car understood the law or what his motive was.

[Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 3–10; Dec. Dig. § 3.*]

5. LARCENY (§ 23*)—"GRAND LARCENY."

Where an automobile worth over $500 was taken from a street by the proprietor of a garage without authority of the owner, and withheld from the owner to enforce payment of a claim due from him, if any crime was committed, either in taking the car from the street or receiving or holding it, it was grand larceny, which is a felony under Pen. Code, § 530, subd. 3, making it "grand larceny" in the first degree to steal or unlawfully obtain in any manner whatever property worth more than $500, and section 533, making grand larceny in the first degree punishable by not exceeding 10 years' imprisonment.

[Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 50–52; Dec. Dig. § 23.*

For other definitions, see Words and Phrases, vol. 4, pp. 3149–3150.]

6. CRIMINAL LAW (§ 21*)—"CRIMINAL INTENT."

While there must be a criminal intent to constitute a crime, the "criminal intent" is the doing of the act prohibited with the intent specified in the statute.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 22; Dec. Dig. § 21.*

For other definitions, see Words and Phrases, vol. 2, p. 1749.]

7. FALSE IMPRISONMENT (§ 10*)—JUSTIFICATION.

In an action for false imprisonment by one arrested for alleged larceny in taking and retaining defendant's automobile without authority, to enforce collection of a claim, plaintiff would not be shielded at least as against the defense of justification by Pen. Code, § 548, providing that it is a defense in a prosecution for larceny that the property was appropriated openly and avowedly under a claim of title preferred in good faith, even though such claim be untenable, but that the section shall not excuse the retention of property of another to offset or pay demands against it, even if the automobile was taken upon the theory that plaintiff had a lien thereon, since, if the section applies to the assertion of a right to a lien, it must relate only where the possession has been taken lawfully.

[Ed. Note.—For other cases, see False Imprisonment, Dec. Dig. § 10.*]

Miller and Dowling, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Robert H. Greene against Charles K. Fankhauser and another. From a judgment for plaintiff and an order denying a new trial, the defendant named appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, LAUGHLIN, and DOWLING, JJ.

Albert R. Hager, for appellant.
Charles Blandy, for respondent.

LAUGHLIN, J. This is an action for false imprisonment. The plaintiff was the manager of the Majestic Automobile Company, a domestic corporation having its place of business at Fifty-Fourth street and Broadway, borough of Manhattan, New York. The appellant was the owner of a "Queens" automobile, which he purchased of the Majestic Automobile Company on the 12th day of June, 1906, in exchange for one which he had purchased of it on the 5th day of the preceding month and a cash consideration of $200. The defendant McGowan was a member of the police force of the city of Greater New York, detailed to detective duty. On the 22d day of September, 1906, the plaintiff was arrested at his place of business by the defendant McGowan without a warrant, and taken to the Forty-Seventh Street Police Station, accompanied by the appellant and the latter's chauffeur and one Maley, who was a member of the bar, and there detained and arraigned in court next day. The evidence is conflicting with respect to the circumstances under which the arrest was made and with respect to what occurred at the police station. It tends to show that the ground assigned at the plaintiff's place of business for the arrest was his refusal to deliver the appellant's automobile which was in the garage at that place and under his immediate charge, or his having received and retained the automobile, knowing that it had been stolen, or both. It quite satisfactorily appears that the material facts bearing upon both charges were discussed, and were known to the plaintiff and to all the parties. It is undisputed that, on the refusal of the plaintiff to surrender the automobile, the detective stated that he would arrest plaintiff, provided a charge were made against him, and inquired who would make the charge. The evidence shows that either the appellant or his chauffeur answered that he would make the charge, but it is conflicting as to which of them did so. With respect to what transpired at the police station, the evidence is also conflicting as to whether the charge made on inquiry by the sergeant or lieutenant was made by the appellant or by his chauffeur. As we view the question presented, however, it is not important that we should analyze the evidence and determine how it preponderates upon the questions of fact as to who made the immediate charge which resulted in the arrest of the plaintiff, or who made the charge upon which he was detained at the police station, for we are of opinion that on no view of the evidence can the verdict be sustained. A verdict that appellant did anything more than he was fairly justified in doing on the undisputed evidence would be against the weight of the evidence.

The automobile, when not in use, was left in the garage of this company. The appellant became indebted to the company for certain storage and repairs, and he deemed bills rendered by the company excessive, in that certain items would be covered by a guaranty receiv-

ed from the company on the purchase of the first automobile which he claimed applied to the second. Efforts to adjust their differences were unsuccessful. Finally, plaintiff refused to permit appellant to take the automobile from the garage until the account was settled. On the 18th day of September, 1906, plaintiff offered to accept $550, which was considerably less than the amount claimed in full for the account rendered, or $394.80 in full for the account for the months of May and July—the account for June had been paid—and gave the appellant to understand that, unless he accepted one or the other of these propositions, he would not be permitted to use the car. Before leaving his office on that day, plaintiff left instructions with the night watchman not to let the car out unless appellant paid one of these amounts, and he also left with the watchman receipts to be used in either contingency. The appellant called for his car that night, and, on being informed by the night watchman what his instructions were, gave a check for $394.80, drawn on a bank in Boston, in which he had an account, to the order of the company, and the car was then delivered to him. The appellant did not return the automobile to the company's garage, and on the next day stopped payment of the check.

It is claimed on the part of the plaintiff that appellant, who was in business and had a bank account in New York, did not intend to pay the check when he gave it. The testimony of appellant is to the effect that he did intend to pay it, but that the car did not run satisfactorily after taking it out, and, on figuring the bills over again, he became convinced that the amount which the plaintiff exacted was unjust, and, further, that it would be better for him to accept the other propositions and pay the $550 in full settlement; but this he did not do. We do not deem it necessary to determine whether or not the appellant delivered the check in good faith and at that time intended to pay it; for it is perfectly clear that, if the plaintiff's company had a lien on the automobile, it was lost by parting with possession. Four days thereafter, and on the 22d day of September, the appellant's chauffeur left the automobile in Broadway near the garage of which the plaintiff was the manager, while he entered a nearby place of business. One Murphy, a bookkeeper employed as the plaintiff's assistant with the Majestic Company, while on his way to the bank, observed the automobile standing in Broadway. At the bank he claims to have been informed by the receiving teller at this time that payment of the appellant's check had been stopped. On his way back from the bank he directed one Daly, a chauffeur connected with the Majestic Company as a demonstrator, whom he saw on the street, to bring the appellant's automobile around to the company's garage. The appellant's chauffeur, according to the testimony of Murphy, on discovering that his car had been taken, learned or surmised where it had been taken and called at the office of the Majestic Company, and there interviewed Murphy, who had ordered it taken to the garage, and the latter admitted that he had directed it to be so taken and stated that it was then upstairs, and that it would stay there, as the appellant had stopped the payment of his check. The chauffeur says that this interview took place on the street. Daly testified that, when directed

by the plaintiff's assistant to take the appellant's car, he hesitated, and said that he was working for the Majestic Company, and did not want to do anything "without orders," that he did not "want to do anything to steal a man's car," and that he was informed by plaintiff's assistant that "everything was satisfactory, that the firm would back me up in what I done," and that he asked whether Mr. Greene or Mr. Bates or anybody left orders to that effect and was informed by Murphy that they had; that prior to that day Mr. Bates, the sales manager of the company under the plaintiff, stated to the witness that he would take the appellant's car if he saw it; that he did not hear the plaintiff say anything about the car prior to that time, but that he was informed by Murphy when directed to take the car that plaintiff said with respect to taking the car "that everything would be all right and I took the car." On this day the plaintiff was attending the Vanderbilt Cup automobile race, and did not return to the office until about 4 o'clock in the afternoon. He denies that he gave in advance any directions with respect to retaking the car. The appellant's chauffeur, after his interview with Murphy, telephoned to the police station, and stated the case to the desk sergeant, who promised to and did send a detective over to investigate the matter. The detective joined the chauffeur, and they together went to the company's office, and had an interview with Murphy and Bates, or one of them, in which the detective demanded the car. According to the chauffeur's testimony, Murphy stated that the car had been taken from the street and was being held because appellant owed the company a bill and stopped payment on the check, and, according to the detective, Bates did the talking, and said that the car was upstairs locked up, but declined to surrender it or to let them see it. On inquiring for the manager, they were informed that he was not in, but was expected later in the afternoon. They then returned to the police station, and had a further interview with the lieutenant, referred to as the desk sergeant by some of the witnesses, who examined some provisions of law, and directed the detective to return to the garage and bring the manager to the police station. As they were about to leave the police station and return to the company's office, the chauffeur decided to communicate with the appellant by telephone, and did so. This concededly was the first knowledge the appellant had of the fact that his car had been taken or that steps were being taken to make an arrest. He directed the chauffeur to wait for him at the exit from the subway at Fiftieth street, and in a few minutes he there joined the chauffeur and the detective. While the detective and the chauffeur were waiting for the appellant, the detective called Attorney Maley, who was passing, and requested his opinion about the matter, and, at the request of the chauffeur, Maley waited until the appellant came. The appellant was introduced to him, and, on being informed of what had transpired, consulted the attorney, and was advised that the manager of the automobile company was liable to arrest if he refused to deliver the car. The appellant then requested the attorney to accompany them to the office of the company, and to make the demand for him. On arriving at the office, Mr. Bates was apparently in charge, and the demand was

first made on him and refused; and about this time the plaintiff arrived and stepped up, and the demand was repeated to him, and he refused to deliver the car. He was warned by the detective and by the attorney of the grave consequences of his act, but he would not yield. The conversation that took place indicates that he was familiar with all the facts, and he conceded upon the stand that, before they arrived, he had been told of the circumstances under which the car was taken from the street, and placed in the garage, and of what had transpired. He refused to deliver the car until the appellant's bill to the company was paid, and inquired of appellant why he stopped payment on the check. He did not assert a lien or make any other claim to the right to the possession of the car.

The court submitted the case to the jury upon the theory that the appellant ordered the arrest of the plaintiff upon the ground that he received and held the automobile, knowing that it had been stolen, and refused to surrender it on demand, and instructed the jury that the liability of the appellant depended upon whether or not the plaintiff was guilty of a felony. It was sufficient to justify the arrest if a felony had been committed, and there was reasonable ground for believing that plaintiff committed it. Code Cr. Proc. § 177. This does not mean, however, that it was incumbent upon the appellant to show, as it would be upon the people on a criminal prosecution, by evidence which satisfied the jury beyond a reasonable doubt, that the plaintiff was guilty of a felony. The arrest was made by a police officer, and not by the appellant. The appellant, therefore, is doubtless entitled to any defense that was available to the officer, and by virtue of the provisions of section 177 of the Code of Criminal Procedure a peace officer is authorized to make an arrest without a warrant for any crime committed in his presence, or where a felony has in fact been committed, and he has reasonable cause for believing that the person arrested has committed it. It seems quite clear that a felony was committed in taking the car from the public street with intent thereby to force the payment of the bill, and to deprive the owner of its use until he did so, and, since the plaintiff at least ratified and adopted that act and refused to give up the car, there was reason to believe that he had directed that the car be so stolen.

Counsel for the appellant requested the court to instruct the jury that, "under the facts adduced in this action, the person who caused the automobile to be taken from the public highway for the purpose of compelling its owner to pay a debt to the Majestic Company was guilty of the crime of larceny;" also, "that under the evidence adduced in this action the person who took the automobile from the public highway and ran it into the Majestic garage was guilty of the crime of larceny, and the person who induced him to do so, if any, was likewise guilty, and, further, that the person who withheld such property with the knowledge that it had been taken was equally guilty of the crime of larceny;" also, "that if the jury find that the plaintiff Greene knew that the defendant's automobile had been taken from the public highway and placed in the Majestic garage by some person other than the owner or his agent, or some person who had not a lawful

right to do so, and without the consent of the owner, and when the possession and delivery of the automobile was demanded from the plaintiff Greene and he thereafter refused to deliver possession thereof to the true owner, he was guilty of a felony, and the verdict in this case must be for the defendant Fankhauser, who, under the circumstances, was justified in causing the plaintiff's arrest, if the jury finds that defendant Fankhauser caused plaintiff's arrest;" also, "that the plaintiff, Greene, must have intended the consequences of his own act, and, if he by withholding the defendant Fankhauser's property in fact deprived or defrauded the owner of its use until such time as the owner should pay the bill owing to the company of which plaintiff was manager, then Greene committed a felony, no matter how openly it was done;" also, "as a matter of law that a person who receives or withholds from the possession of the true owner any property, knowing the same to be stolen or appropriated in such manner as to constitute larceny, is guilty of a felony;" also, "that the automobile company had no lien upon the automobile for repairs alleged to have been made thereon and had no right to withhold the automobile from the possession of its lawful owner;" also, "that one who takes possession of personal property and withholds the same from the possession of the lawful owner thereof in order to exact the payment of money due from said owner to such person is guilty of larceny, if the property is to be retained until such is paid;" also, "that an intent to deprive a true owner of his property by taking or withholding the same is a criminal intent as defined in the penal statute;" and, also, "that the momentary possession of property belonging to another is enough to constitute the crime of larceny, if such possession be unlawful." These requests made separately were all declined, and an exception was duly taken to each ruling. The jury had not been instructed in the charge in chief in substance or effect as thus requested.

It is quite likely that error could not be predicated upon each one of these refusals to instruct the jury, if the request stood by itself, for they are not all technically correct propositions of law, but several of them are, and, taking them all together, we are convinced that the jury was not properly instructed with respect to the law, and that the rights of the appellant have been prejudiced thereby. It was very important that the jury should understand by specific instructions to that effect from the court that the automobile company had no lien upon the automobile, and had no right to retain possession of it. It was expressly conceded at the commencement of the trial by counsel for the plaintiff that the company had no lien on the car at the time plaintiff refused to surrender it to the appellant, and that the company had no right to keep it because he owed it money; but the jury may well have lost sight of that during the progress of the trial, and may not have fully appreciated that that concession was binding upon the plaintiff and was a correct rule of law, and that it followed therefrom that plaintiff had no right to retain the car. The material facts constituting the crime of larceny in taking the automobile from the street and in detaining it for the payment of the bill which appellant owed to the automobile company were sufficiently recited for the pur-

pose of constituting a defense in such an action as this in the requests which the court declined. It is contended in behalf of the respondent that they all omitted the element of criminal intent. In a case like this we are of opinion that the criminal intent is the intent to deprive the owner of his property in taking it from the street or in detaining it in the garage. That is the material fact with respect to the intent that constitutes the crime. The question is not whether the plaintiff understood the law, nor is it to be determined by his motive. Section 528 of the Penal Code, so far as material to the questions now under discussion, provides as follows:

"A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, either (1) takes from the possession of the true owner, or of any other person; * * * or secretes, withholds or appropriates to his own use, or that of any person other than the true owner, any money, personal property, thing in action, evidence of debt or contract, or article of value of any kind, * * * steals such property and is guilty of larceny. * * *"

The value of the automobile was concededly over $500, and therefore if any crime was committed, either in taking the car from the street or receiving it or holding it, it was grand larceny which is a felony. Pen. Code, §§ 530, 533, 550, 555. There is no express provision of the statute that the act of the party must be willful or with a criminal intent. The statute operates upon one "who, with the intent to deprive * * * the true owner of his property, or of the use and benefit thereof * * * secretes or withholds * * * any * * * personal property, * * *" and declares such act to be stealing and to constitute the crime of larceny. Of course, it is well settled that there must be a criminal intent in order to constitute a crime, but the criminal intent is the doing of the act prohibited with the intent specified in the statute. The Court of Appeals in People ex rel. Hegemann v. Corrigan, 195 N. Y. 14, 87 N. E. 792, recently removed the doubt on this point created by its former decision in People v. Wiman, 148 N. Y. 29, 42 N. E. 408. In People ex rel. Hegemann v. Corrigan, Chief Judge Cullen, writing for the court, states that a careful examination of the case of People v. Wiman shows that the real difficulty found by the court was "the restricted meaning which the trial court gave to the term 'defraud' and its refusal to charge that if the defendant believed that under the rules of law he had legal authority to make a check, and indorse it as he did, the crime was not forgery"; and further says:

"Indeed, if the court after charging that a criminal intent was necessary to a conviction had been asked by the jury to instruct them as to what would constitute a criminal intent, it is difficult to suggest any other answer the court could have given than that it was an intent to defraud."

In the circumstances developed upon the trial with respect to the taking of the car from the public street and the detention of it and the claim made by the plaintiff, I am of opinion that the plaintiff was not shielded, at least not against the claim of justification for his arrest interposed as a defense in an action for false arrest and imprisonment

by the provisions of section 548 of the Penal Code.   That section provides as follows:

"Upon an indictment for larceny it is a sufficient defense that the property was appropriated openly and avowedly under a claim of title preferred in good faith, even though such claim is untenable.   But this section shall not excuse the retention of the property of another, to offset or pay demands held against him."

It may well be that if the plaintiff had the lawful possession of the automobile, and erroneously, but in good faith, asserted ownership or a lien thereon, the provisions of this section would relieve him of the charge of larceny in detaining the property; but he asserted no lien, and, if it might be inferred that that was the theory upon which he was withholding the property, still the section would not apply; for, if it applies to the assertion of a right to a lien at all, it must relate only to a case where the possession has been obtained lawfully.   If this be not so, then a creditor is at liberty to seize the personal property of his debtor anywhere and detain it until the account is settled; and if he act in good faith, believing that he had a right to, he would not be subject to a criminal prosecution.   It is not entirely clear that the claim of title referred to in this section would include a claim of a right to a lien upon property, and it may well be that it only relates to the ownership, and, since it is not essential to construe the section in that regard, no opinion is expressed thereon.

It would not redound to the credit of the administration of justice if the owner of property may not call upon a police officer to pursue and overtake one who is unlawfully taking it from his possession or control and demand its return, and then, if he do not acquiesce in the refusal to comply with the demand, but encourages the officer to make an arrest, he renders himself liable to respond in damages to the individual who unlawfully took and retained his property.   The plaintiff brought the arrest upon himself.   By holding the automobile and with knowledge of all the facts refusing to deliver it to the owner he adopted the acts of Murphy and Daly as if he had personally seized the car in the public street.   It is possible, but not probable, that a man holding the position of general manager of an automobile company thought he had a right to thus seize the car, but it is highly probable that he has heard of the remedy afforded by an action in replevin to obtain possession of personal property, and, instead of resorting to it, he took the law into his own hands, and thus brought it to bear upon himself, and has no just ground of complaint according to this record.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., and McLAUGHLIN, J., concur.   MILLER and DOWLING, JJ., dissent.