Mario Pittoni, J.
In these two consolidated actions plaintiff Halberstadt seeks damages for false arrest, malicious prosecution and slander; and plaintiff Wishbow seeks damages for false arrest and slander only. The basic facts giving rise to those causes of action occurred on March 24, 1958.
The defendant was and had been the landlord of premises at 146 Mott St., Oceanside, N. Y., for a number of years. The area *473 which he owned was nearly 10 acres and was completely enclosed by a high wire fence and by several gates. It also had 28 buildings of various sizes and dimensions, each separately numbered. Building No. 6 was the one involved in the incidents in issue. It had been occupied for a number of years with machinery and equipment belonging to the tenant.
The tenant originally acquired possession by a lease dated November 18, 1949, and by its extension stayed on pursuant to the lease until December 31,1955. Thereafter, the tenant was permitted to stay on without any renewal upon the payment of monthly rent.
The lease had several paragraphs which may be pertinent in this litigation. Paragraph 6 states ‘ ‘ That the Tenant will use said rented premises only for light manufacturing and light metal working ”. Paragraph 19 states in part that “It is expressly understood and agreed that * * * if default be made in the payment of the rent or any part thereof * * * the Landlord may, if the Landlord so elects, at any time thereof ter terminate this lease and the term thereof on giving to the Tenant five day’s notice in writing of the Landlord’s intention so to do ”. Paragraph 24 states “ That if default be made in any of the covenants herein contained, then it shall be lawful for the said Landlord to re-enter the said premises, and the same to have again, re-possess and enjoy. The said Tenant hereby expressly waives the services of any notice in writing of intention to re-enter, as provided for in § 998 of the Civil Practice Act, or by any law of the State of New York ”.
Sometime in November, 1957 the tenant told the defendant landlord that he was doing poorly in his business and to use the security given at the inception of the lease for the December, 1957 and January, 1958 rent. Thereafter, the tenant paid the February, 1958 rent by a check, which was returned for ‘1 Insufficient Funds ’ ’. The tenant also failed to pay the March, 1958 rent.
In the meantime, the Franklin National Bank had a chattel mortgage on the tenant’s chattels and equipment located in building No. 6, and this property was surrendered to the bank through a voluntary written surrender to plaintiff Wishbow, an auctioneer, acting on behalf of the bank. Plaintiff Wishbow called this a private foreclosure. It was made without any court proceeding or court order. He then proceeded to make arrangements for an auction sale, including the tagging, of all the chattels and equipment previously owned by the tenant and located in building No. 6.
*474 The plaintiffs said that when the defendant first saw plaintiff Wishbow on his premises making arrangements to conduct an auction sale, he told plaintiff Wishbow he had no right on the premises. Nevertheless, on March 19, 1958 plaintiff Wishbow went there again and was told by the defendant to leave. But plaintiff Wishbow said he would conduct an auction sale there on March 24,1958 anyway.
In the meantime, however, the defendant padlocked the doors to building No. 6 and also started dispossess proceedings by petition signed March 17, 1958, and a precept issued March 18, 1958 and served on March 19, 1958, for rent due from February 1,1958.
On March 24, 1958, a crowd of people, numbering anywhere between 75 and 100, with a number of trucks, swarmed unto the defendant’s property in anticipation of plaintiff Wishbow’s auction sale. When the plaintiffs got there they saw the doors of building No. 6 padlocked. Whereupon plaintiff Wishbow told plaintiff Halberstadt, the tenant’s son, to break the hasps and remove the padlocks. Plaintiff Halberstadt did it and both plaintiffs entered the building. On seeing this, the defendant told them that he would call the police because of their illegal entry. The plaintiffs ignored him, the defendant then called the police, told them that the plaintiffs had broken in illegally and, upon the defendant’s insistence, the police ordered the plaintiffs out of the building. According to plaintiff Wishbow, upon being-told to get out, he said ‘ ‘ The only way you are going to get me out of here is you are going to have to arrest me,” that the policeman responded with “ That’s exactly what is going to happen here,” and then turned to the defendant and said “ Do you want these people arrested? ’ ’ To this, according to plaintiff Wishbow, the defendant then said ‘11 want them all arrested ’ ’. A policeman then began to push plaintiff Wishbow out of the building and plaintiff Wishbow resisted the ouster.
A great deal of confusion existed, and there is a grave dispute as to exactly what was said. The plaintiffs’ witnesses say that the defendant pointed to them and said he wanted the police to arrest them. The police said they did not arrest anyone and that they were merely assisting the defendant to make an arrest. The defendant and his witnesses say the defendant merely kept pointing out those whom he claimed had broken the lock and had illegally broken into the building, and that he wanted the plaintiffs and others out of his building. It is interesting to note that the official police record says nothing about any arrest. Be that as it may, the plaintiffs say that they were ordered into the police cars and brought to a police station. On the other *475 hand, the defendant and his witnesses say that all insisted on going to the police station to straighten out the dispute. At the police station the police captain asked the defendant if he wanted to make a complaint. The defendant answered “ No ”; he merely wanted to make sure the plaintiffs would not conduct an auction sale on his property. Whereupon, when the officer in charge said that since no criminal complaint was being made they could all leave, the plaintiffs went back to the area of building No. 6 and there conducted the auction sale that same afternoon.
I shall first discuss plaintiff Halberstadt’s cause of action for malicious prosecution. No cause of action has been made out because there was no favorable termination of a prior criminal prosecution. In fact, no criminal prosecution was ever started against the plaintiff. A criminal prosecution is commenced (1) when an information is laid before a magistrate charging the commission of a crime, and a warrant of arrest is issued, or (2) when the Grand Jury has returned an indictment (Code Grim. Pro., § 144). Therefore, since no criminal prosecution was ever begun, the plaintiff has failed to make out a cause of action for malicious prosecution (Halberstadt v. New York Life Ins. Co., 194 N. Y. 1), and this cause of action must be dismissed.
I shall now consider the causes of action for slander. Plaintiff Halberstadt’s complaint alleges that the defendant said “ He broke and entered my property illegally in violation of a court order”. Plaintiff Wishbow’s complaint states that the defendant said “ that plaintiff had unlawfully broken and entered the defendant’s property”. I fail to find that the defendant uttered the words as quoted. However, assuming that he did utter those words, the defendant did not in any way charge the plaintiffs with any crime, as the plaintiffs contend. Under the circumstances of the case the defendant was well within his rights in making that statement to the police and he made it for the clear purpose of having the plaintiffs ejected after they had forcibly removed his locks and entered the building. Be that as it may, the alleged words — taken in context with the other Avords used during the incident, and together with the acts of the plaintiffs in breaking the locks and entering the building in the presence of others and the invitation by plaintiff Wishbow that he be arrested as the only means by which he could be removed — cannot convey to any reasonable person the thought that the plaintiffs were being charged with any crime. Furthermore, the statements attributed to the defendant were spoken, not written, and the plaintiffs have neither alleged nor proved special damages (Gurtler v. Union Parts Mfg. Co., *476 285 App. Div. 643, affd. 1 N Y 2d 5). These causes of action for slander must, therefore, be dismissed.
The next cause of action is false arrest, or false imprisonment. The plaintiffs have failed to prove by a preponderance of evidence that they were arrested by or on behalf of the defendant. As some of the policemen stated, at the time of the incident complained of, there was utter confusion. Under the circumstances, it cannot be determined whether the defendant merely asked to have the plaintiffs removed from his property, whether he was unwittingly irritated or goaded into using words of arrest by the shouted exchange concerning arrest begun by plaintiff Wishbow, answered by a policeman, and then directed to the defendant, or whether an arrest was made by the police since a policeman declared that he was going to arrest the plaintiffs before the defendant uttered any words of arrest. After all, ‘ ‘ if the defendant directed an officer to take the plaintiff into custody, he was liable for false imprisonment; but if he merely made his statement, leaving it to the officer to act or not as he thought proper, he was not liable ” (Vernes v. Phillips, 266 N. Y. 298, 301). Then too, it is questionable whether the plaintiffs went to the police station involuntarily, or whether they all went to have their rights determined, or to have the defendant decide whether he would execute a complaint. One thing is certain and clear, there was too much incredible testimony on both sides to make a decision of fact for one or the other. Accordingly, the plaintiffs have failed to sustain their burden of proof on this cause of action and it must be dismissed.
Assuming the whole of the plaintiffs’ version to be true, they had no right to be on the defendant’s premises, and they committed a misdemeanor by breaking the lock and entering. Under the circumstances, if there was a detention it was not a false arrest. The plaintiffs argue that they stand in the place and stead of the tenant. Assuming this to be true, under the terms of the lease the tenant had only the right to use the premises for light manufacturing, not for the conduct of any sale or auction sale. Thus, when the defendant discovered that his building and land was no longer being used for manufacturing, but was being used for an auction sale in violation of the terms of the lease, he had the right to re-enter and repossess'his building, lie did this by padlocking the building. Thereafter, when plaintiff Halberstadt broke the padlock hasps at the direction of plaintiff Wishbow and both entered the building, they violated section 2034 of the Penal Law in that they were “ guilty of using, or of procuring, encouraging and assisting another to use, any force or violence in entering upon * * * any lands *477 or other possessions of another”. This was a misdemeanor. (See, also, Penal Law § 2036; Town Law, § 130, subd. 19.) An arrest under such circumstances was justified and the plaintiffs themselves have shown that there was no unlawful detention.
Furthermore, plaintiff Wishbow invited the arrest and he should be denied recovery on that ground alone. (Prosser, Torts [2d ed.], § 18, p. 83.)
The contention may be raised that “ since defendant merely pleaded a general denial, and no affirmative defense ’ ’, he should 1 ‘ have been precluded from introducing evidence of justification ”. (Woodson v. New York City Housing Auth., 10 N Y 2d 30, 33.) However, evidence of justification was not introduced by the defendant; that issue was raised by the plaintiffs themselves and they showed justification for the arrest by their own evidence, on their own affirmative case, before they rested. The rule of the Woodson case applies where there is mere evidence of an arrest. Then ‘‘ the presumption arises that such arrest and imprisonment were unlawful, and the burden of proving justification rests on defendant”. (Woodson, supra, p. 33.) However, “ 1 The presumption * * * remains only so long as there is no substantial evidence to the contrary’”. (St. Andrassy v. Mooney, 262 N. Y. 368, 371; Richardson, Evidence [8th ed.], § 57.) Here there was substantial and convincing evidence to the contrary offered, not by the defendant in justification, but by the plaintiffs themselves during their own affirmative case. In short, the plaintiffs themselves proved that there was no false arrest and that they had no cause of action.
Enough has been said to establish that the plaintiffs have failed to make out a cause of action for false arrest. It is not necessary to consider whether the service of the precept upon the tenant on March 19, 1958 was a five-days’ notice of termination of the lease. The complaint is dismissed.