Robert L. PIERSON et al., Appellants,

v.

J. L. RAY et al., Appellees.

No. 21325.

United States Court of Appeals
Fifth Circuit.

Oct. 25, 1965.

L. H. Rosenthal, Jackson, Miss., Carl Rachlin, New York City, for appellants.

Thomas H. Watkins, E. W. Stennett, City Atty., Elizabeth W. Grayson, Jackson, Miss., for appellees.

Before JONES and BELL, Circuit Judges, and HUNTER, District Judge.

JONES, Circuit Judge:

The appellants brought an action against the appellees alleging a common-law tort claim for false imprisonment and a statutory [1] claim for damages for a deprivation of civil rights. The appellants were clergymen. One of them is a Negro. The appellees Ray, Griffith and Nichols were police officers of the City of Jackson, Mississippi. The appellee Spencer was the Police Justice and Ex-Officio Justice of the Peace, Hinds County, Mississippi.

Fifteen clergymen in clerical attire, including the appellants, were participants

[1]. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C.A. § 1983.

in a so-called prayer pilgrimage. Most of the twenty-six who were accepted for the pilgrimage resided in Northern states. The pilgrimage was to start at New Orleans and go on to Dearborn, Michigan. A bus was chartered from New Orleans to Jackson, but not beyond. At Jackson the fifteen clergymen went by taxicab to the Continental Bus terminal. They had bus tickets for transportation to Chattanooga, Tennessee. They arrived at the bus terminal in Jackson about 11:20 o'clock in the forenoon of September 13, 1961. The Chattanooga bus was scheduled to depart shortly after noon.

The prayer pilgrimage had been well publicized in advance. The appellees Griffith and Nichols had been sent to the bus station. Upon or soon after their arrival the fifteen clergymen started toward the coffee shop. They were stopped by the two officers and remained in the passageway leading to the coffee shop. The officers directed or ordered them to "move on." The clergy stayed at the place where they were halted. One of the officers telephoned the police station and soon after the appellee Ray arrived. He was then a captain of police. At the time of the trial of the cause in the district court he was deputy chief of police. When the group arrived there were fifteen to twenty people in the bus station. Twenty-five to thirty people, all of whom were white, followed them in. There was testimony that the people in the station were "mumbling in a very ugly mood," that they were "disturbed," that

they were "in a turmoil," and that quite a disturbance was caused. The group of prayer pilgrims were completely orderly. Captain Ray told the clergy to "move along" and upon their failure and refusal to do so, they were arrested and taken to jail. An affidavit was filed by Captain Ray charging them with disorderly conduct under a Mississippi statute.[2] The appellants were tried on September 15, 1961, before the appellee, Judge Spencer, and found guilty. Each of the appellants was sentenced to four months in jail and fined two hundred dollars. Appellants Breeden, Morris, and Pierson were released on bond on September 19, and the appellant Jones was released on bond on September 29, 1965. Bond was available to all of the appellants and it was by their choice that they remained in jail rather than being sooner released on bond. The appellants took an appeal to the County Court of the First Judicial Court of Hinds County, where the appeal was by way of a de novo trial. The case of the appellant Jones was first heard by the County Judge, who found him not guilty. The prosecution then moved that the charges against the other appellants be nolle prosequied, and the motion was granted. The appellants brought this action, each claiming $11,001 damages. The cause was tried before a jury which returned a verdict for the appellees. A judgment was entered on the verdict from which this appeal has been taken.

In a pre-trial deposition of the appellee Spencer, he was asked whether a citizen has a right to disobey an un-

2. 1. Whoever with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby:

(1) crowds or congregates with others in * * * any hotel, motel, store, restaurant, lunch counter, cafeteria, sandwich shop, * * * or any other place of business engaged in selling or serving members of the public, or in or around any free entrance to any such place of business or public building, or to any building owned by another individual, or a corporation, or a partnership or an association, and who fails or refuses to disperse and move on, or disperse or move on,

when ordered so to do by any law enforcement officer of any municipality, or county, in which such act or acts are committed, or by any law enforcement officer of the State of Mississippi, or any other authorized person, * * * shall be guilty of disorderly conduct, which is made a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not more than two hundred dollars ($200.00), or imprisonment in the county jail for not more than four (4) months, or by both such fine and imprisonment: * * *. Miss.Code 1942 Recompiled § 2087.5.

reasonable or improper order of a police officer, as in a case in which it was clear that the order of the policeman to move on was improper. He was asked to answer the question as a judge. His answer was that he thought the citizen should obey the officer and later seek redress. The appellants were not permitted to question the appellee Spencer as to this opinion when he was called as an adverse witness at the trial. The appellants contend that the ruling was erroneous. The refusal of the district court to permit the question was not error. Both at the taking of the deposition and at the trial the questions were propounded to the witness in his capacity as a judge. Whether or not a judicial opinion is erroneous is not a question to be resolved by a jury. A judge's function is to decide cases, but not to answer academic or hypothetical questions.

 The appellee Spencer filed a motion to dismiss the complaint as to him on the ground that his actions were judicial and he was immune from any civil liability. The motion was deferred for decision until the trial of the case on the merits. No ruling on the motion was made. The judgment for the appellants made the question unimportant, but we think it is appropriate to say that the motion should have been granted. By the leading case of Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646, the immunity was established of judges of courts of superior or general jurisdiction from liability for damages growing out of the performance of their judicial duties. The doctrine has been extended to the judges of all courts. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434; Yaselli v. Goff, 2nd Cir. 1926, 12 F.2d 396, aff. 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395. The rule applies to city magistrates and municipal judges. Cuiksa v. City of Mansfield, 6th Cir. 1957, 250 F.2d 700, cert. den. 356 U.S. 937, 78 S.Ct. 779, 2 L.Ed.2d 813; Reilly v. United States Fidelity & Guaranty

Co., 9th Cir. 1926, 15 F.2d 314; 35 C.J.S. False Imprisonment § 44, p. 707. Such is the law in Mississippi. Bell v. McKinney, 63 Miss. 187. The judicial immunity applies in civil rights actions as well as at common law. Norton v. McShane, 5th Cir. 1964, 332 F.2d 855, cert. den. 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed. 2d 274. If a judicial officer acts in the clear absence of all jurisdiction and authority he incurs liability for a false imprisonment caused by him. 35 C.J.S. False Imprisonment § 44, p. 707. The Mississippi statute, Sec. 2087.5, on its face, was sufficient to justify the action taken by Judge Spencer. The statute had not then been held invalid. It was subsequently upheld by the Supreme Court of Mississippi in Thomas v. State, 160 So.2d 657, Farmer v. State, 161 So. 2d 159, and Knight v. State, 248 Miss. 850, 161 So.2d 521. We think it cannot be said that there was a clear absence of jurisdiction in the appellee Spencer at the time action was taken by him although, since this cause was argued before us, the statute was held invalid as applied to circumstances such as those in this case. Thomas v. Mississippi, 380 U.S. 524, 85 S.Ct. 1327, 14 L.Ed.2d 265. See Boynton v. Com. of Virginia, 364 U.S. 454, 81 S.Ct. 182, 5 L.Ed.2d 206. A judge should not be put to a correct determination of the validity of a criminal statute at the hazard of being cast in damages for the making of a wrong guess. We think it was proper to defer a ruling on the motion of the appellant Spencer but it should have been granted when the evidence was in.

 The doctrine of immunity which has long prevailed with respect to judicial officers, has been extended to other officers of government whose duties are related to the judicial process. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, Norton v. McShane, 5th Cir. 1964, 332 F.2d 855, cert. den. 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274;[3] Gregoire v. Biddle, 2nd Cir. 1949, 177

3. In Norton v. McShane a claim was asserted against Federal marshals. For Erie-Tompkins [Erie R. Co. v. Tompkins,

304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] purposes it was a Mississippi case.

F.2d 579, cert. den. 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363. In this cause, as in Norton v. McShane, supra, the doctrine of official immunity protects the police officers from common-law false-imprisonment liability. The rule may be otherwise where a claim is asserted under a Civil Rights Act. In Norton v. McShane,[4] supra, it was said:

> "While it is clear that the common-law immunity afforded legislative and judicial officers applies in suits under the Civil Rights Acts, there remains much uncertainty as to the extent to which immunity for subordinate executive officials applies, if it applies at all." 332 F.2d 855, 860–861.

The uncertainty then existing still prevails. 15 Am.Jur.2d 452 et seq., Civil Rights § 67. It might seem to be an anomaly of the law that in the case of a Federal police officer acting in Mississippi, an extremely aggravated wrong must remain unredressed because of public policy, as was held in Norton v. McShane, supra; while in the case before us, municipal police officers, acting in Mississippi, may be required to answer in damages for acting in good faith under a state statute which they were entitled to presume to be valid. Yet such appears to be the law which controls our decision on this issue in this appeal.

■ By dictum in Hoffman v. Halden, 9th Cir. 1959, 268 F.2d 280, it was indicated that by the Civil Rights Act liability was imposed on state officers for acts within as well as without the scope of their authority if done under color of law. In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, it was held that under 42 U.S.C.A. § 1983 a cause of action may be asserted against a state police officer acting under color of state law for deprivation of a Fourteenth Amendment Constitutional right whether or not done wilfully. See Cohen v. Norris, 9th Cir. 1962, 300 F.2d 24. Cf.

Davis v. Turner, 5th Cir. 1952, 197 F.2d 847. Inherent in the Monroe holding is the principle that good faith and reliance upon a state statute subsequently declared invalid are not available as defenses. Monroe v. Pape did not expressly rule upon the question of immunity but the result necessarily implies rejection of such a defense as a general proposition. Cohen v. Norris, supra. The defense of immunity is not available to the police officer appellees in this cause.

■ While one of the appellants was on the stand as a witness for himself and the other appellants, he was shown a copy of the Daily Worker, setting out nine demands of the Communist party with respect to racial discrimination, and asked if he agreed with the demands. The witness was required to answer over objection. His answer was, as to all but one, that he agreed and as to it he was undecided. The appellants then moved for a mistrial. The motion was denied. The interrogation of the witness as to his beliefs regarding racial segregation and the like seem wholly irrelevant to any of the issues of the case. It might be urged with plausibility that the error in permitting the questions to be asked and requiring them to be answered was not prejudicial. We cannot agree. The permitting of the use of the Communist party organ, the Daily Worker, as the source of the inquiries could not be other than prejudicial error.

■ The trial court permitted one of the appellants and their witnesses to be questioned regarding racial strife in the City of Jackson occurring in connection with the visitation of Freedom Riders, so called, some time prior to the episode from which this action arose. Appropriate objections were made and overruled. No connection was shown between the Freedom Riders and the Prayer Pilgrims, and the appellants denied any connection. It was not shown that the earlier incidents were suffi-

---

4. It may be noted that Norton v. McShane was decided more than a year after Nesmith v. Alford, 5th Cir., 318 F.2d

110. The writer of the Norton opinion was one of the judges of the panel that decided Nesmith.

ciently close in point of time to have any relation to the situation with which we are dealing. It was error not to have sustained the objections.

The appellants here complain of a charge [5] given by the district court with respect to the Mississippi statute. No specific objection was made to the charge nor grounds of objection assigned.[6] It may be observed, in connection with the instruction, that at the time of the trial the Mississippi statute, Section 2087.5, had not been held invalid. The instruction, in the form given, would not now be proper.

The appellants complain of the trial court's instruction [7] on probable cause, and an objection to it was made and preserved. If the trial court had been correct in its assumption that Section 2087.5 was a valid statute defining a misdemeanor, then the instruction would have been proper. A police officer is permitted to arrest, without a warrant, for misdemeanors committed in his presence. Is he to be required in order to be free from liability for damages, to have his action vindicated by a judgment of conviction, an affirmance on appeal, and a Supreme Court determination of the validity of the statute under which he has acted? The authorities are not uniform as to whether a public officer can be held civilly liable for acting under the authority of a statute subsequently held invalid. Miller v. Stinnett, 10th Cir. 1958, 257 F.2d 910. The rule followed in Mississippi, which may be the minority rule but which is controlling here, is that a public officer is not charged with the duty of determining at his peril whether a statute is valid when he is acting under it. Golden v. Thompson, 194 Miss. 241, 11 So.2d 206. Thus the challenged instruction was not improper when given although if it should be requested now, since the statute has been declared invalid, it would be couched in different terms; although the conduct of the appellees would be tested by the situation existing at the time of their action.

5. The law of Mississippi is this—and I instruct you that Section 2087.5 of the Mississipi Code of 1942 Recompiled and as amended provides that whoever congregates with others in a public place or in any place of business engaged in serving members of the public under circumstances such that a breach of the peace may be occasioned thereby and who fail or refuse to disburse and move on when ordered so to do by any law enforcement officer of any municipality shall be guilty of a misdemeanor; and if you believe from the preponderance of the evidence in this case that on September 13, 1961, the plaintiffs congregated with others at the Trailways bus station in Jackson, Mississippi, under such circumstances that a breach of the peace may have been occasioned thereby, and that the plaintiffs failed or refused to disburse or to move on when ordered so to do by the police officers of the City of Jackson, Mississippi, then it would be your duty to return a verdict for the defendants in the case.

That is, you might say, the crux of the law, but, of course, everything I say to you is a part of the law, and all of the instructions will be taken together; but if a bunch of folks congregate with others engaged in serving members of the public under circumstances such that a breach of the peace may be occasioned thereby, and fail or refuse to disburse when ordered so to do by a law enforcement officer, he is guilty of a misdemeanor, and the officers under those circumstances would have the right to arrest him.

It is not contemplated by that law that any violence would be done to any particular person, but if a bunch of people gather at a public place under such circumstances as then existed that a breach of the peace may occur unless the officers have a right to tell them to move on, and if they refuse to do so, then, of course, they would be guilty of the crime, and the officers would have the right to arrest them.

6. A general objection, which counsel attempted to interpose because of his fear that his memory had failed him, is unavailing. Fed.Rules Civ.Proc. 51, 28 U.S. C.A.

7. I further instruct you that if you find from a preponderance of the evidence in this case that at the time of the arrest of the plaintiffs by the defendants Ray, Griffith and Nichols said defendants had probable cause to believe that the plaintiffs were guilty of the offense for which they were arrested, it is your duty to return a verdict for the defendants.

The appellant Morris was the executive director of the society which organized and supervised the prayer pilgrimage. The court admitted in evidence, over timely objections, his letters and memoranda used in organizing and planning the pilgrimage. From these exhibits and from the testimony of the appellant Morris it could have been inferred that one of the purposes, perhaps the prime purpose, of the pilgrimage was to have at least ten of the group jailed in Jackson. The length of time for remaining in jail was discussed. Arrangements in advance for bail bonds and for counsel had been made, or so it could have been found. In one of the communications it was said:

"All in all, I think you can count on becoming familiar with the Jackson jail, or at least a goodly portion of our group can. Perhaps one of our number spoke for us when he said, 'About jail—Here I am, send me. I'm not brave but I'm obedient.'"

The evidence would have permitted a finding, not only that being jailed in Jackson was a possibility, but that the participants would go to Jackson for the purpose of procuring their jailing and would so conduct themselves as to insure the achievement of that result. We do not say that this evidence required such a finding; we say that it permitted it. If the appellants' claims can be defeated by a showing of a plan and purpose of being arrested and jailed, then the evidence was properly admitted. We think that such a showing would preclude recovery and the question is presented by the appellants' specification of error next considered.

The remaining assignment of error is the denial by the trial court of the appellants' motion for a directed verdict on the issue of liability, leaving only the question of damages to the jury. In urging this point, the appellants rely upon Nesmith v. Alford, 5th Cir. 1963, 318 F.2d 110, cert. den. 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420. In Nesmith the plaintiffs had been arrested and placed in jail. They sued police officers for malicious prosecution, false imprisonment, and deprivation of civil rights. This court held that the plaintiffs, Nesmith and his wife, were entitled to a directed verdict as a matter of law as to liability on the common-law claim for false imprisonment and, as we read the court's opinion, on the civil rights claim. The false-imprisonment common-law claim is a state cause of action. The Nesmith case was decided under the law of Alabama. This case arises under the law of Mississippi. It is our considered view that under the law of Mississippi the appellants were not entitled to a directed verdict of liability on the false-imprisonment claim. As we have pointed out, there was evidence from which it might have been found that the appellants went to Jackson, not only contemplating the possibility of being jailed, but with a design and plan that they should be. If they had such a design and plan, are they entitled to recover damages for having accomplished their objective?

The question is not whether the appellants could lawfully dramatize their protests against racial inequality by attempting to eat in a wrongfully segregated lunch room in a bus terminal of an interstate passenger carrier. It goes without saying that they might do so. Rather the question is whether, in so doing, can they include in their program a planned arrest and confinement and then successfully rely upon such confinement as the basis for recovery in an action for damages for false imprisonment. Throughout the common law of torts the maxim, volenti non fit injuria, is applicable. It is applicable to false imprisonment. 35 C.J.S. False Imprisonment § 46 c., p. 712. One who has invited or consented to arrest and imprisonment should be denied recovery. Halberstadt v. Nelson, 34 Misc.2d 472, 226 N.Y.S.2d 100; Greene v. Fankhauser, 137 App.Div. 124, 121 N.Y.S. 1004; Stork v. Evert, 47 Ohio App. 256, 191 N.E. 794. The principles set forth in the recent case of State for Use of Powell v. Moore, Miss., 174 So.2d 352, show a recognition

of the rule as applicable in Mississippi, although under a factual situation different from the case before us. An earlier decision, and one more nearly in point on its facts, is Williamson v. Wilcox, 63 Miss. 335, where it was said, "For a purely private injury one cannot maintain a suit when he has consented to the act which produced the injury." Whatever the law may be in some jurisdictions,[8] we conclude that, under the law of Mississippi, to which we look for the governing common-law rules of law,[9] proof that the plaintiffs invited or consented to arrest and confinement precludes recovery for false imprisonment. Since, as is said in Monroe v. Pape, supra, "Section 1979 [42 U.S.C.A. § 1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." We think the tort principle of volenti non fit injuria applies to the claim asserted for a civil rights violation under 42 U.S.C.A. § 1983 as well as to the common-law cause of action. For reasons elsewhere discussed in this opinion, we hold that the appellees are immune from liability for false imprisonment at common law but not from liability for violations of the Federal statutes on civil rights. It therefore follows that there should be a new trial of the civil rights claim against the appellee police officers so that there may be a determination of the fact issue as to whether the appellants invited or consented to the arrest and imprisonment.

The judgment of the district court will be reversed and remanded so that the complaint and the action may be dismissed as to the appellee Spencer, and a new trial had as to the other appellees in accordance with this opinion.

Reversed and remanded.

8. As in Alabama. See Nesmith v. Alford, 5th Cir. 1963, 318 F.2d 110.

9. Questions as to liability under Civil Rights Acts are Federal questions to be

determined by Federal Law. Nesmith v. Alford, supra, n. 8; 15 Am.Jur.2d 453, Civil Rights § 67.