George H. HUGHES et al., Appellants,

v.

James JOHNSON et al., Appellees.

No. 17333.

United States Court of Appeals
Ninth Circuit.

June 27, 1962.

Millington & Millington, and Robert Millington, Gridley, Cal., for appellants.

William H. Orrick, Jr., Asst. U. S. Atty., Civil Division, Department of Justice, Morton Hollander, Chief, Appellate Sec., John G. Laughlin, Terrence N. Doyle, Ronald A. Jacks, Attys., Department of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., San Francisco, Cal., and Robert E. Woodward, Asst. U. S. Atty., Sacramento, Cal., for appellees.

Before HAMLIN, MERRILL and BROWNING, Circuit Judges.

MERRILL, Circuit Judge.

Appellees are federal game wardens. Appellants are the owners of the Gridley Poultry Market, located in Gridley, California, which engages in the business of cold storage of game birds of hunters. The action is brought to recover from appellees damages allegedly suffered by appellants by virtue of appellees' trespass in an unlawful search for and seizure of game birds in appellants' possession.

Appellants sought compensatory damages for loss of business and business reputation and false imprisonment. They also sought punitive damages. Alleging that such trespasses have occurred in the past, they sought an injunction against further trespass.

The action was brought in the California state courts. Appellees removed the suit to the federal courts pursuant to 28 U.S.C. § 1442, and then moved to dismiss on the ground that the complaint failed to state a claim. The district court ruled that the acts of the appellees were within the scope of their duties as federal officers and were accordingly protected by immunity from civil suit under Barr v. Matteo, 1959, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434. The motion of appellees was granted, the action was dismissed and this appeal followed.

Appellants' position is that the conduct of the wardens amounted to unlawful search and seizure and that the violation of such constitutional rights, made criminal by law (18 U.S.C. § 2236), is not protected by immunity under Barr v. Matteo, supra.

If we were here faced with a case of unauthorized search, we should for the reasons later discussed agree with appellants. The difficulty with their position is that the allegations of the complaint are to us more consistent with inspection than with trespass.

According to the allegations of the complaint, the following events occurred. On December 21, 1958, twelve federal game wardens, under color of official office, descended upon the Gridley Poultry Market. Six of them entered the premises while six remained outside, making it difficult for customers to come and go. Those who entered displayed no search warrants. They seized the customers' records which appellants are required by law to keep. Without permission, the wardens entered the area behind the counter, entered the refrigerator, deepfreeze and lockers of the appellants and

seized certain wild fowl belonging to various customers of appellants for the reason that the tags attached to the fowl failed in certain respects strictly to comply with the requirements of law. The wild fowl not seized were intermingled and mixed up and left in a disorderly condition. After spending three hours going through appellants' premises, the officers left, taking with them the records and the wild fowl which had been seized. These have not been returned, although demanded. No arrest was ever made.

Appellants appear to assume that a search warrant is necessary before these officers may demand production of the records or of the game birds in their possession. This clearly is not so.

Pursuant to treaty obligations of the United States with Great Britain and Mexico, the Congress has through the Migratory Bird Act, 16 U.S.C. § 703 et seq., imposed upon the Secretary of the Interior the responsibility for conserving and protecting certain game birds and has empowered him to adopt regulations to this end. The Secretary, through regulations, has specified the time, place, number and kind of migratory game birds that may be taken and the manner in which they may be taken. The regulations in effect at the time of the acts alleged in the complaint provided:

"No person, other than the person who has lawfully taken such birds, shall receive, possess, or have in custody migratory game birds for picking, cleaning, processing, shipping, or for transportation or storage (including temporary storage at hunting clubs) unless such birds have a tag attached signed by the hunter stating his address, the total number and kinds of birds, and the date killed. Any commercial picking establishment, cold-storage or locker plant receiving, possessing, or having in custody migratory game birds shall maintain accurate records showing the numbers and kinds of such birds, the dates received and disposed of, and the names and addresses of the persons from whom such birds are received and to whom such birds are delivered. Such records shall be produced at any reasonable time for inspection by any officer authorized to enforce this part. * * * The records so required to be maintained shall be retained by the person or persons responsible for their preparation and maintenance for one year following the close of the open season on migratory game birds prescribed for the State in which such picking establishment, cold-storage or locker plant is located." 50 C. F.R. 6.9, 1958–1959.

16 U.S.C. § 706 provides that all birds possessed contrary to law shall be seized.

It is the duty of appellees to enforce these provisions. It is their official right to demand of those having game birds in their possession a showing that these regulations have been complied with and that the birds have been taken and are possessed according to law.

Thus we are here concerned with a reaching of public papers as to which appellees have the right to demand production and appellants the duty to produce. Davis v. United States, 1946, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453; Wilson v. United States, 1911, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, As in Frank v. Maryland, 1959, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877, the premises involved are charged with a duty that entry for purposes of inspection be permitted.

It is, however, implicit in Davis v. United States, supra, that the right to inspect does not carry with it the right, without warrant and in absence of arrest, to reach that which is to be inspected by a resort to self-help in the face of the owner's protest. In Davis, the seizure was upheld for the reason that it was voluntary; that, as a matter of fact, consent had been obtained and that, in obtaining consent, "the officers did not exceed the permissible limits of persua-

sion." 328 U.S. 591, 66 S.Ct. 1256. Likewise, in Frank v. Maryland, supra, it was pointed out that the right to inspect had not been asserted by "breaking past the unwilling occupant." 359 U.S. 367, 79 S.Ct. 804.

The question before us is simply whether the complaint of appellants shows that these officers, in reaching that which it was their duty to inspect, have exceeded the permissible limits. In our view, the complaint does not so allege. For the most part, the allegations in effect charge no more than that the inspection and seizure were actuated by malice and conducted in an offensive manner wholly unwarranted by the circumstances. It is the rule of Barr v. Matteo, however, for the reasons of policy there discussed, that such official conduct is immune from suit.

It is alleged in the complaint at one point that the officers, without permission, did trespass in the store area behind the counter in order to seize the wild fowl. The context in which this fact is alleged, however, renders it ambiguous. It is alleged:

> "That said premises are a business store, but that the areas behind the counter are private property. The areas behind the counter containing among other things, refrigerators, deep-freezes, cold storage facilities and the picking and processing rooms are not open to the public, but that nevertheless the defendants above named, did, without permission, trespass in and upon the said areas * * *."

The appellees thus are treated as though they were members of the public, with no greater right to enter or cause to assume permission to enter. Yet we gather that this "private" area is the very area in which inspection must be made and thus the very area into which it is the duty of appellants to grant entry. It does not appear from the complaint that protest was made against entry or that lack of permission to enter and inspect on this occasion was otherwise made known.

The presumption that these officers were acting within the scope of their official duty to inspect should, we feel, require appellants to be more specific in their charges of impropriety. The public policy behind Barr v. Matteo should provide at least this much protection against the harassment of suits founded upon injury apparently resulting from official acts.

In our judgment, then, the district court was correct in viewing this complaint as failing to state a claim.

However, this is not to say that it may not be amended to state a claim. Dismissal of the action by the district court was apparently upon the ground that even viewing this incident as an unauthorized search and seizure (as distinguished from an official inspection) Barr v. Matteo, supra, grants immunity. With this we disagree.

Barr v. Matteo was concerned with an officer's liability for injury resulting from the performance of acts *within the scope of official duties*, when such performance was actuated by malice. For reasons of public policy, the officer was held immune from suit under these circumstances. Our problem at this point does not relate to the malicious performance of official duties. The question is whether a search without warrant and unsupported by arrest, in violation of the Fourth Amendment of the United States Constitution, can be said to fall within the scope of the official duties of these appellees. In our view, it cannot, and accordingly immunity does not extend to such conduct.

Reversed and remanded with instructions that the judgment of dismissal be set aside and that appellants be granted leave to amend their complaint within such reasonable period of time as may be fixed by the district court.

The parties shall bear their respective costs on this appeal.