John J. KELLEY, Plaintiff, Appellant,

v.

Raymond J. DUNNE, Defendant, Appellee (two cases).

Elizabeth-Ann KELLEY, Plaintiff, Appellant,

v.

William F. WHITE et al., Defendants, Appellees.

Nos. 6390, 6391, 6406.

United States Court of Appeals First Circuit.

March 11, 1965.

Rehearing Denied April 21, 1965.

F. Lee Bailey, Boston, Mass., with whom Robert A. Barton, Boston, Mass., was on brief, for appellant in 6390 and 6391.

Harold Katz, Boston, Mass., with whom James C. Hamilton, Boston, Mass., was on brief, for appellant in 6406.

J. William Doolittle, Attorney, Department of Justice, with whom John W. Douglas, Asst. Atty. Gen., W. Arthur Garrity, U. S. Atty., and Morton Hollander and Edward Berlin, Attorneys, Department of Justice, were on brief, for appellees.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Chief Judge.

These three cases against two defendants, although not heard together either in this court or in the court below, involve sufficient similarities to merit treatment in one opinion. Each was brought in the state court and removed to the district court by the defendant pursuant to 28 U.S.C. § 1442(a) (1). In each the defendant thereafter filed an affidavit, moved for, and obtained, a summary judgment in his favor. In one case the plaintiff filed a counteraffidavit. In reciting the facts we exclude, of course, those which were so contradicted. We will also, to simplify the presentation, speak in terms of one defendant, since both had similar positions and duties, and were similarly engaged.[1] On that basis the presently assumed facts were these.

In October 1962, the defendant came to the home of the two plaintiffs, Mr. and Mrs. Kelley. The defendant was a United States postal inspector, duly assigned to and then engaged in the investigation of a mail robbery that had occurred some weeks before in Plymouth, Massachusetts. Under 39 U.S.C. § 3523 (a) (2) (C) and (K) he had authority to investigate, develop evidence, locate witnesses, and make arrests. Mr. Kelley was out; Mrs. Kelley was at home. In order to gain admission he told her, falsely, that he had a warrant authorizing him to search the premises and, again falsely, that there was a warrant outstanding for the arrest of Mr. Kelley for a robbery five years before in Ohio, and that Mr. Kelley was suspected of complicity in the Plymouth robbery. He "did place his hands" upon Mrs. Kelley, and by "force and the threat of physical force * * * restrained her * * *." Although in legal terms assault, battery and false imprisonment, this conduct towards Mrs. Kelley was not such that it would have been excessive if in fact defendant had had a search warrant.

It is, we take it, conceded that defendant had no personal ill will against either Mr. or Mrs. Kelley, and that his only purpose was to carry out what he conceived to be his duties. However, it is specifically alleged in one of the cases that he knew that no warrants had been issued, either in Ohio, or in connection with this search. The government filed a single brief in all three cases and drew no factual distinction between them either there or in oral argument. Since these are motions for summary judgment requiring construction in plaintiff's favor we think it would be inappropriate for us to assert a distinction ourselves. Hence we will assume in all cases that defendant knew that no warrants existed.

The defendant's search discovered some U. S. currency, and two cloth money bags, which he took away with him over Mrs. Kelley's objections. According to his uncontradicted affidavit these items are now "held by the United States Post Office * * * in connection with the investigation of the [Plymouth] * * * robbery."

---

1. Strictly, one defendant was the other's superior, but the other was acting under his instructions.

The cases thus stand that defendant postal inspector, engaged in investigating a mail robbery, and, in particular, plaintiff Kelley's possible connection therewith, did four things which he could lawfully have done under certain circumstances, none of which circumstances existed; viz., defendant stated to Kelley's wife in order to obtain entry that he had a warrant charging Kelley with robbery; entered and searched Kelley's house; restrained Kelley's wife from interfering with the entry and search; and took away certain property. Defendant contends, and the district court found, that as matter of law plaintiffs nevertheless cannot recover.[2]

At first blush it would seem that if personal interests are invaded without lawful excuse, such as a search warrant, hot pursuit, or consent, there should be a civil remedy. However, it has long been recognized that in some circumstances where a public interest is involved this interest may be paramount. The classic statement of the principle was given by Judge Learned Hand in Gregoire v. Biddle, 2 Cir., 1949, 177 F.2d 579, 581, cert. den. 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363.

> "The justification for [denying recovery] * * * is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."

A long line of decisions has, both before and since, recognized that in many instances "the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits based on acts done in the exercise of their official responsibilities" outweighs "the protection of the individual citizen against damage caused by oppressive or malicious action on the part of public officers." Norton v. McShane, 5 Cir., 1964, 332 F.2d 855, 857, petition for cert. pending.[3]

Gregoire v. Biddle, supra, was a personal action against the Attorney General and a number of other public officials asserting that the plaintiff had been imprisoned, on their order, as an enemy alien when in point of fact he was not such; that defendants' conduct was "without any reasonable or colorable cause" and was, accordingly, malicious and wilful. The court, interpreting this to mean not only that defendants lacked grounds for belief, but did not in fact believe that he was such an alien, nonetheless held that the complaint stated no cause of action.

Except to the extent that the court cited the principle of judicial and prosecutorial privilege, Gregoire relied upon Spalding v. Vilas, 1896, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780. There the defendant Postmaster General had delivered compensation checks to claimants with the statement that the payments were being made direct because of a Congressional requirement, and added a comment suggesting that the reason for this requirement was that the services rendered by their attorney had been unnecessary. Plaintiff alleged that this addition was false and was made maliciously for the purpose of indicating that plaintiff, who was their attorney, was rendering bills for services when he had performed no services, and thus to defame plaintiff, and to induce breaches of contract. The court said, at p. 498 of 161 U.S., at p. 637 of 16 S.Ct. "As in the case of a judicial officer, we recognize the distinction between action taken by the head of a department in reference to matters which are manifestly

---

2. The opinion in the husband's suit for slander appears at 230 F.Supp. 969, and in his action for return of the personal property at 230 F.Supp. 986.

3. Whether we agree with the actual decision in this case we will consider later, but this statement we accept.

or palpably beyond his authority, and action having more or less connection with the general matters committed by law to his control or supervision." It concluded that the defendant "cannot be held liable to a civil suit for damages on account of official communications made by him pursuant to an act of congress, and in respect of matters within his authority, by reason of any personal motive that might be alleged to have prompted his action; for personal motives cannot be imputed to duly-authorized official conduct."

The defendant, in other words, was an officer authorized to make communications, and whereas it may have been that what he stated was wrong, it was not on its face something he should not have stated, and a cause of action cannot be created by asserting that the defendant had a malicious motive.

In Barr v. Matteo, 1959, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, the court held that a complaint which alleged that a public official making a public statement about another official which he was not "required" to make, but which he had "discretion" to make, must fail even though it was alleged that the defendant acted from spite and knew that what he was saying was false.[4] Correspondingly, in Howard v. Lyons, 1959, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454, decided the same day, the court recognized absolute immunity for a discretionary publication by another public official. In this instance Justice Harlan spoke for a majority of the court.

Taking these cases collectively,[5] the principle is established that free and untrammeled behavior of certain government representatives is so important to the public welfare that, within limits, they should not be exposed to liability for damages by charges of improper motives, or of conscious wrongdoing.[6] The difficulty is the extent of the principle. We may note, however, certain common denominators. In the first place the conduct of the defendants in all cases, viewed without reference to the defendants' alleged motives, was within the normal scope of their agency powers. A second common denominator is that the activity of the defendant was prima facie in accordance with his duties and customary behavior. It is usual for an attorney general to take procedural steps to enforce the statutes, for a disbursing officer to explain the circumstances of a payment, for an information officer to give out information. While no act can ever be judged in vacuo, but only with some measure of reference to external circumstances, some actions require very little showing in order to appear at least prima facie justified, while others need elaborate support. Paradoxically it would seem that it is in the latter situation that there is less need for the immunity doctrine. In the latter case, where an officer knows that he is acting out of the ordinary, he is on notice of the circumstances, and there is more reason for him to have to expect to be prepared to justify his conduct. This is far less of a burden than if he had to be con-

---

4. Only four justices joined in Justice Harlan's opinion. However, Justice Stewart accepted the "persuasive analysis of the principles," and dissented only from their particular application. (This dissent did not carry the day because Justice Black concurred in the result reached by the four justices, but felt the opinion did not go far enough.)

5. Gregoire v. Biddle is not a Supreme Court decision, but in addition to being considered a landmark by other lower courts, it appears to be so regarded by the Supreme Court. See Barr v. Matteo, supra, at 571–572; Garrison v. State of

Louisiana, 1964, 379 U.S. 64, 75, 85 S.Ct. 209, 13 L.Ed.2d 125.

6. There may, of course, be a distinction between improper motive and conscious wrongdoing. A man may say or do what he believes to be correct, but have been induced to take the action solely because of spite or personal ill will. In the law of defamation such matters may be important. Cf. Hartmann v. Boston Herald-Traveler Corp., 1948, 323 Mass. 56, 59, 65, 80 N.E.2d 16; Brewer v. Second Baptist Church, 1948, 32 Cal.2d 791, 197 P.2d 713, 718. See generally Developments in the Law—Defamation, 69 Harv.L.Rev. 875, 929–931.

stantly on guard in every routine case of customary activity.

Thirdly, since the doctrine of absolute immunity is based upon the relative importance of the public, as against a private, interest, application of the doctrine must vary with the relative weight of the competing interests. In the cases in which private rights have been foreclosed, free exercise of the public function has been considered highly important.

■ Applying these principles to the cases at bar there would seem a substantial difference between a public information officer uttering a defamatory statement in the course of an official announcement, for example, and a postal inspector making a search without, so far as presently appears, consent or a warrant or belief that there was a warrant, and volunteering slander. The public need to protect such conduct, or conduct difficult to separate therefrom, is minimal. In the case of the head of an agency it is not only appropriate and customary to make releases, but his entire function would be basically circumscribed if danger of liability existed. The uttering of defamation by a postal inspector, on the other hand, without the assurance of a warrant, or, indeed, the making of the search itself without a warrant, is, or should be, the unusual case.[7] There would be no serious hamstringing of the activities of postal inspectors if, in the absence of a warrant, they were obligated, to some extent, to defend their actions.[8] In such a situation we see no compelling need to superimpose, absolutely, the public interest upon private rights. Cf. Hughes v. Johnson, 9 Cir., 1962, 305 F.2d 67; Colpoys v. Gates, D.C.Cir., 1941, 118 F.2d 16; Kozlowski v. Ferrara, D.C.S.D.N.Y., 1954, 117 F. Supp. 650; Ampey v. Thornton, D.C.D. Minn., 1946, 65 F.Supp. 216.

Admittedly the recent case of Norton v. McShane, 5 Cir., 1964, 332 F.2d 855,

petition for cert. pending, is contra. We are unable to follow it. Indeed, we find ourselves unable to see why federal investigatory officers should be given absolute immunity for trespass under circumstances where, had they been state officials, they might have found themselves personally responsible under an act of Congress. Cf. Monroe v. Pape, 1960, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492. The defendant cites Swanson v. Willis, D.C.D.Alaska, 1953, aff'd on the opinion below, 9 Cir., 1955, 220 F.2d 440. If there is any force left in that case after Hughes v. Johnson, 9 Cir., 1962, 305 F.2d 67, we do not agree with it.

■ The defendant did not suggest here or, apparently, in the district court, that he had a conditional privilege which, on the record, entitled him to judgment. However, if only for the purpose of further proceedings, we will deal briefly with that subject. As a public official engaged in the performance of his duty it is clear that the defendant had a conditional privilege if he did not have an absolute one. Such a privilege is a defense until "malice" is shown, the burden being on the plaintiff. However, malice in this sense means something broader than personal ill will; it means an "abuse" of the privilege. Sheehan v. Tobin, 1950, 326 Mass. 185, 93 N.E.2d 524. Or, as the Massachusetts court put it in a recent personal action against a public official, the privilege is lost upon proof of "actual malice * * * or * * * reckless indifference to the rights of the individual citizen." Vigoda v. Barton, Mass., 204 N.E.2d 441. See also opinion of Judge, now Justice, Stewart in A. B. C. Needlecraft Co. v. Dun & Bradstreet, Inc., 2 Cir., 1957, 245 F.2d 775, at 777, " 'malice' required to destroy the privilege does not alone mean actual malice * * * [but] can also consist of 'such a wanton and reckless disregard of the rights of another as is ill will's

7. We need hardly add that obtaining consent to enter without a warrant by deliberate misrepresentation would not advance any governmental purpose.

8. The standard we adopt is conduct which is reckless or worse. See infra.

134

equivalent.' " Cf. H. E. Crawford Co. v. Dun & Bradstreet, Inc., 4 Cir., 1957, 241 F.2d 387, 395. Entry upon private premises, without consent, on the assertion of a warrant, knowing that there is none, would seem to us a prime example of reckless indifference to the rights of the individual citizen however devoted the officer may, mistakenly, feel to what he considers his duty. So also, of course, is the uttering of defamatory statements which are known to be false. Any higher requirement for destruction of the conditional privilege would permit any officer, who was sufficiently ingenuous or zealous, to ride roughshod as "duty" called.

Lest we be misunderstood, we do not hold the officer to the same standard with respect to personal liability as we would the government in testing the validity of its actions. For example, a search made with a warrant supported by what is subsequently determined to be an insufficient affidavit is illegal. We would not suggest that the officer's personal liability is so easily established. Hunt v. Evans, D.C.Cir., 1926, 56 App.D.C. 97, 10 F.2d 892. An error in constitutional interpretation, or in concluding what are "reasonable grounds to believe" may be fatal to the government's position, but not to the officer's. Unreasonableness and recklessness are by no means equivalent. Vigoda v. Barton, supra.

■ ■ We will deal briefly with the action for the return of the money and personal property. The district court, properly construing the defendant's affidavit in favor of the plaintiff, did not treat the property as being no longer in the defendant's possession. It did, however, regard it as also in the government's possession, citing Malone v. Bowdoin, 1962, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168. It quoted from page 647 of that opinion, 82 S.Ct. p. 983:

" * * * the action of a federal officer affecting property claimed by a plaintiff can be made the basis

of a suit for specific relief against the officer as an individual only if the officer's action is 'not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void.' * * * Since the plaintiff had not made an affirmative allegation of any relevant statutory limitation upon the Administrator's powers, and had made no claim that the Administrator's action amounted to an unconstitutional taking, the Court ruled that the suit must fail as an effort to enjoin the United States."

It seems to us that the court drew the inapposite conclusion from the language quoted. Since the property here was taken by the defendant without warrant or present semblance of probable cause it must follow that it was an "unconstitutional taking." See Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081; Berkowitz v. United States, 1 Cir., 1965, 340 F.2d 168.

*The judgments of dismissal must be vacated and the cases returned for further proceedings consistent herewith.*

WOODBURY, Senior Circuit Judge (by designation; concurring).

The rule developed and extended in recent cases excluding evidence illegally obtained affords direct protection to the guilty. But the rule protects the innocent person whose premises are illegally but fruitlessly ransacked, and perhaps left a shambles, only indirectly through its supposed [1] tendency to discourage official excesses. I recognize the danger of groundless actions and consequent dampening of official zeal. However, I see no reason why the innocent should not have direct protection as well as the guilty by the only means available to them, that is, by an action against the officer responsible for the wrong. However, I would not destroy a federal officer's privilege altogether by making him

1. See Dash, Cracks in the Foundation of Justice, 46 Ill.L.Rev. 385, 391 (1951).

See also Burgher, Who Will Watch The Watchman? 14 Am.U.L.Rev. 1 (1964).

broadly answerable in damages for the "reasonableness" of his conduct. The law relating to searches, seizures and arrests is today so technical and refined that a federal officer can all too readily make an honest error of constitutional law. I would go no further than to cut down an officer's privilege or immunity from absolute to qualified or conditional by permitting an action against him but only on a clear showing of "malice, corruption, or cruelty," [2] to which I would add ruthless indifference to a citizen's rights.

Thus in my view an officer-defendant would win on motion for summary judgment unless the plaintiff could come up with solid evidence first that the officer's action was not within the outer perimeter of his powers and second that his action was taken in "bad faith," using that term as shorthand for the elements essential for liability I have enumerated above. See Hart & Wechsler, The Federal Courts and the Federal System, 1220–1221 (1953). In short, I think to be actionable an officer's conduct should not only be in excess of his powers but also inspired by "bad faith" as I use the term. Summary judgment would therefore afford a defendant protection from ill founded actions, as pointed out by Mr. Justice Brennan in his dissent in Barr v. Matteo, 360 U.S. 564, 589, 79 S.Ct. 1335 (1959), thereby minimizing the deterrent effects upon official action envisaged by the late Judge Learned Hand in Gregoire v. Biddle, 177 F.2d 579, 581 (C.A.2, 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803.

Application of the principle I advocate would result in reversal of the judgments of the court below, for as the case now stands there is evidence that the defendant acted with reckless indifference by resorting to defamation to gain his ends. I concur.

Before ALDRICH, Chief Judge, and WOODBURY and HARTIGAN, Senior Circuit Judges.

On Petition for Rehearing.

ALDRICH, Chief Judge.

The defendants' petition for rehearing raises nothing new, except one impermissible matter. In the single brief filed before argument on behalf of defendant-appellees jointly in all cases it was stated that the question presented was whether defendants, "as Postal Inspectors charged with the investigation of mail robberies," came within the principle of absolute immunity. The brief was exclusively devoted to a discussion of this doctrine and the contention that the defendants were acting within the "Outer Perimeter" of their authority. Neither in the brief nor in oral argument was it suggested that, for purposes of their motions for summary judgment, defendants relied upon alleged consent by Mrs. Kelley to their conduct. Dissatisfied with their failure to achieve success on a broad scale, government counsel now proffer the deposition of one defendant, which they concede was not presented before, to the effect that Mrs. Kelley had consented to an entry and search. Passing the difficulties how this consent could, even if accepted, constitute a defense to all the claims, counsel should know not to ask a rehearing, on a new record, of a question not previously argued.

Petition denied.

---

2. See Wilkes v. Dinsman, 48 U.S. (7 How.) 89, 129, 12 L.Ed. 618 (1849), where the Court wrote:
   "* * * a public officer, invested with certain discretionary powers, never has been, and never should be, made answerable for any injury, when acting within the scope of his authority, and not influenced by malice, corruption, or cruelty."