Mrs. Frances B. **CHAFIN**, Appellant,

v.

Dr. Harry D. **PRATT** et al., Appellees.

No. 22343.

United States Court of Appeals
Fifth Circuit.

March 16, 1966.

Rehearing Denied April 13, 1966.

G. Seals Aiken, Atlanta, Ga., for appellant.

Edward Berlin, Sherman L. Cohn, Attys., Dept. of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Charles L. Goodson, U. S. Atty., Dept. of Justice, Washington, D. C., for appellees.

Before BROWN, WISDOM and THORNBERRY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This is a head-on, but belated, attack on the doctrine of official executive immunity espoused by the Supreme Court in Barr v. Matteo, 1959, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434,[1] and adhered to by this Court in decisions both before [2] and after [3] Barr.[4] Again the attack fails, for the only thing novel about it is an allegation based on Greene v. McElroy, 1959, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed. 2d 1377, that appellant was denied pro-

---

1. See the companion case, Howard v. Lyons, 1959, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454.

2. De Busk v. Harvin, 5 Cir., 1954, 212 F. 2d 143.

3. Wozencraft v. Captiva, 5 Cir., 1963, 314 F.2d 288; Norton v. McShane, 5 Cir., 1964, 332 F.2d 855; United States v. Faneca, 5 Cir., 1964, 332 F.2d 872, cert. denied, 1965, 380 U.S. 971, 85 S.Ct. 1327, 14 L.Ed.2d 268; Pierson v. Ray, 5 Cir. 1965, 352 F.2d 213 [Oct. 25, 1965].

4. It is perhaps more precise to say that appellant ignores, rather than attacks, the doctrine of official immunity.

cedural due process, a question which we hold is not proper for consideration at this time nor in this lawsuit.

Appellant instituted this suit in the Georgia State Court against employees [5] of the Federal Government seeking a money judgment for libel and slander predicated on acts of these employees which culminated in her involuntary retirement for disability from her position as a secretary with the Vector Control Services Training Section of the Public Health Service's Communicable Disease Center in Atlanta. The gist of this common-law tort action was that defamatory statements and writings were made by Defendants and sent to appellant and others asserting in effect that appellant was mentally disturbed and unfit for her job, and that Defendants forced her to be examined by a psychiatrist upon pain of being retired if she refused. From the

exhibits attached to appellant's complaint, it is obvious that all of the alleged statements relied upon were contained in official intragovernment memoranda, letters, or reports.

The Defendants removed the suit without objection to the Federal District Court.[6] Upon removal, appellant amended her complaint to allege that the same actions constituted a conspiracy to deprive her of civil rights in violation of 42 U.S.C.A. § 1985. Her principal ground for this allegation was that she was deprived of the right to a hearing and to the confrontation of witnesses prior to her involuntary retirement.

Defendants, in support of a motion for summary judgment, submitted affidavits and exhibits which showed that all of the acts complained of were performed by them as official duties pursuant to government regulations.[7] Appellant submit-

5. The defendant-employees of the United States (appellees) held the following positions: Chief of Vector Control Training Service; Chief of Communicable Disease Center; Personnel Officer of CDC; Personnel Management Specialist of CDC; Acting Chief of CDC; Chief of Military Hospital's Psychiatric Service; a Psychiatrist under contract with Civil Service Commission; Regional Appeals Examiner of Civil Service Commission.

6. 28 U.S.C.A. § 1442(a) provides: "A civil action * * * commenced in a State court against any of the following persons may be removed by them to the district court * * *: (1) Any officer of the United States * * * or person acting under him, for any act under color of such office * * *."

7. It is unnecessary to detail the acts complained of or the duties purported to perform. It is enough to say that the complained of action was part of five processes: (1) the refusal of Plaintiff's supervisor to recommend her for within-grade salary increase; (2) the insistence by her supervisors that she submit to a fitness-for-duty examination; (3) their suspending her for thirty days and proposing to suspend her for six months; (4) their applying for, and obtaining, on her behalf disability retirement; (5) their requiring her to take leave without pay pending administrative approval of her disability retirement. A simplied chronology of events, including a summary de-

scription of these five processes, will demonstrate the official duties performed by Defendants and the administrative remedies utilized or not by Plaintiff. The following is based on the undisputed, uncontradicted facts of this record:

*Process (1):* Pursuant to the Federal Salary Reform Act of 1962, 5 U.S.C.A. § 1121, a prerequisite of within-grade step-up in compensation for federal employees is the determination by the head of the employee's department that his work "is of an acceptable level of competence." In accordance with the regulations of the Department of Health, Education and Welfare, HEW, Personnel Manual Circular No. 531-1, and the Civil Service Commission, 5 CFR § 531.407(a), Plaintiff's supervisor determined that her work did not meet this standard and notified her in writing of the reasons for this determination. 5 CFR § 531.407(b) (1). Pursuing the only administrative remedy available (5 CFR § 531.407(d): "There is no right to a review by the Commission of a department's determination"), Plaintiff sought and was denied reconsideration of this determination within HEW. 5 CFR § 531.407(b) (2).

*Process (2):* Plaintiff's superiors then requested her to take a fitness-for-duty examination pursuant to HEW, Personnel Manual Instruction No. 339-1. See 5 CFR § 339.101.

*Process (3):* Upon Plaintiff's refusal to submit to such an examination, her

ted counter affidavits of herself, her husband, and a business acquaintance. But none of these denied factually that the Defendants had acted within the scope of their official duties. Rather, each merely recited facts showing in affiant's view these Government employees had wrongfully and erroneously determined her to be disabled.

Under these circumstances we agree with the District Judge that there was no genuine issue as to the fact that Defendants' acts were in the performance of official duties, that absolute immunity from personal tort liability shielded these acts, and that there has been no denial of Appellant's civil rights. We, therefore, affirm the summary judgment entered for Defendants.

superiors notified her of their intention to apply for her disability retirement. Civil Service Retirement Act, 5 U.S.C.A. § 2257(a); 5 CFR § 831.501(d); Federal Personnel Manual Supplement No. 831–1, § S10–2(2), at 29. They then filed such an application on the Commission's Standard Form SF–2801A. Since a physical examination must accompany this application, 5 CFR § 831.502(a), and since Plaintiff still refused to take one, Defendants initiated the next process.

*Process (4):* In order "to promote the efficiency of the service," 5 CFR § 752.-104(a), Plaintiff was suspended for thirty days and notified of a proposed six-month suspension. She appealed the thirty-day suspension. Under 5 CFR § 752.-304, appeal from a suspension of thirty days or less (generally known as a "Subpart C" appeal) lies with the Commission only (suspensions for more than thirty days are appealable concurrently to the agency involved and the Commission, 5 CFR § 771.201 et seq.) and only to review procedural deficiencies. No hearing is required in a Subpart C appeal. While her appeal was pending, Plaintiff agreed to take the medical examination required for disability retirement, so the Defendants cancelled the 30-day suspension (reinstating her with backpay pursuant to 5 CFR § 752.402) and the notice of the proposed 6-month suspension. Accordingly, her appeal became moot.

*Process (3) continued:* Upon receiving the report of Plaintiff's medical examination, the Commission's Bureau of Retirement & Insurance approved her agency-

## I.

### Common-Law Action for Libel and Slander

 We need not belabor the rule that Government officials and employees are immune from tort liability for acts committed in the performance of official duties. Barr v. Matteo, supra. Its history, rationale, and scope were thoroughly discussed in Norton v. McShane, 5 Cir., 1964, 332 F.2d 855,[8] cert. denied, 1965, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274. Its acceptance in this Circuit has recently been reaffirmed, but not without some misgivings. Pierson v. Ray, 5 Cir., 1965, 352 F.2d 213; cf. Fowler v. Southern Bell Tel. & Tel. Co., 5 Cir., 1965, 343 F.2d 150. Thus we are not writing on a

initiated disability retirement. Pursuant to 5 U.S.C.A. § 2266(d) and 5 CFR § 831.107, she appealed this decision to the Commission's Board of Appeals & Review which affirmed. No hearing was held as none seems to be required by the regulations. See Smith v. Dulles, 1956, 99 U.S. App.D.C. 6, 236 F.2d 739, cert. denied, 352 U.S. 955, 77 S.Ct. 329, 1 L.Ed.2d 244; Murphy v. Wilson, 1956, 99 U.S.App.D.C. 4, 236 F.2d 737, cert. denied, 352 U.S. 954, 77 S.Ct. 326, 1 L.Ed.2d 243; Ellmore v. Brucker, 1956, 99 U.S.App.D.C. 1, 236 F.2d 734, cert. denied 352 U.S. 955, 77 S.Ct. 329, 1 L.Ed.2d 244. 5 U.S.C.A. § 2266(c) provides that the Commission's decision is final and conclusive.

*Process (5):* Pending the approval of her disability retirement (Process (3)), Plaintiff's superiors placed her on leave-without-pay. Such action would normally be appealable to the Commission (5 CFR §§ 752.203 [Subpart B appeal], 772.301) or within the agency (5 CFR §§ 771.205, .208), and in either case there would be a hearing (5 CFR §§ 772.305, 771.214). Plaintiff appealed to the Commission, but its Regional Appeals Examiner (a defendant herein), making the initial decision (5 CFR § 772.306), determined that there was no right of appeal since the adverse action was taken because of Plaintiff's disability, not as a disciplinary measure. Plaintiff did not appeal this initial determination to the Board of Appeals & Review. 5 CFR § 772.307. See generally HEW, Personnel Manual Instruction No. 771–1.

8. See 332 F.2d at 858 n. 2, 859 n. 5.

clean slate.[9] First, it is clear at this late date that federal and not state law governs the application of the immunity doctrine to federal officers and employees. Howard v. Lyons, supra note 1; see Wheeldin v. Wheeler, 1963, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605; Norton v. McShane, supra, 332 F.2d at 860 n. 6.[10] Second, under federal law as interpreted in *Barr* there is only one prerequisite for the application of immunity: the action taken must be within the outer perimeter of the executive official's line of duty. 360 U.S. at 575, 79 S.Ct. at 1341, 3 L.Ed. 2d at 1443.[11] That the federal officer acted with malice makes no difference. Barr v. Matteo, supra; see Wozencraft v. Captiva, 5 Cir., 1963, 314 F.2d 288; De Busk v. Harvin, 5 Cir., 1954, 212 F.2d 143.

When we apply *Barr* to the facts of this case, as interpreted most favorably to appellant, it is clear that immunity applies.[12] The Defendants' actions were clearly within the outer perimeter of their line of duty. Their affidavits and exhibits attached thereto specifically enumerate the administrative regulations and statutory provisions which they followed in taking these actions respecting appellant. See note 6, supra. Their alleged defamatory statements are contained in reports made on official printed forms, in written notices required by the regulations to be given to appellant, and in affidavit evidence submitted by Defendants for use in appellant's administrative appeals (see 5 CFR § 772.304(b)). Furthermore, Defendants' actions involving the employment tenure, and discipline of a federal employee are of a nature which most obviously should be committed to their discretion without fear of vexatious suits for personal liability. See Wozencraft v. Captiva, supra; De Busk v. Harvin, supra; Waterman v. Nelson, 2 Cir., 1949, 177 F.2d 965 (per curiam); cf. Blitz v. Boog, 2 Cir., 1964, 328 F.2d 596, cert. denied, 379 U.S. 855, 85 S.Ct. 106, 13 L.Ed.2d 58 (suit against government physician for damages based on unrequested treatment). Thus, this case

---

9. It may well be that the immunity doctrine has now been extended too far, that the policy of the doctrine as analyzed by Judge Learned Hand in Gregoire v. Biddle, 2 Cir., 1949, 177 F.2d 579, cert. denied, 1950, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363, merits reexamination, especially in light of the trend toward contracting other kinds of tort-liability immunity. In Pierson we noted the anomaly resulting from the different protection accorded federal officers and state officers by Norton on the one hand, and by Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, on the other. But thus far judicial resistance to the immunity doctrine has taken the form of restriction of its scope rather than rejection. In Fowler v. Southern Bell Tel. & Tel. Co., 5 Cir., 1965, 343 F.2d 150, noting that the defense of immunity "imposes a drastic impingement on personal liberty," 343 F.2d at 154, we held that
 the defense should not be sustained on the basis of technical procedural defaults of the opposing party or in the absence of a clear and specific factual demonstration that the actions of the officers were indeed taken in pursuit of their official duties.
343 F.2d at 155. The Ninth Circuit has put a gloss on what constitutes performance of official duties, Hughes v. Johnson, 9 Cir., 1962, 305 F.2d 67, and the First Circuit has refused to follow the broad sweep of *Norton*, Kelley v. Dunne, 1 Cir., 1965, 344 F.2d 129. See generally 44 Texas L.Rev. 570 (1966).

10. Thus, appellant's effort to show that the Defendants' acts were tortious under Georgia law is hardly relevant.

11. In Norton v. McShane we said that the acts complained of "must have more or less connection with the general matters committed by law to the officer's control or supervision, and not be manifestly or palpably beyond his authority," 332 F. 2d at 859, and further that the acts must be pursuant to "a decision which it is necessary that these officers be free to make without fear or threat of vexatious or fictitious suits and alleged personal liability." 332 F.2d at 862.

12. Here, in fact, the alleged torts of libel and slander are not as grievous as the alleged torts of assault and battery and malicious arrest in *Norton*. Barr and *Lyons* both involved charges of libel and slander. See Holmes v. Eddy, 4 Cir., 1965, 341 F.2d 477 (per curiam), cert. denied 86 S.Ct. 881.

fits within both the letter and the spirit of the *Barr* immunity rule.

■ Appellant nevertheless contends vigorously that she was entitled to take her case to the jury, that the District Court erred in granting Defendants' motion for summary judgment. Apparently she assumes that the filing of counter affidavits makes it a jury case. But this is not enough, for as the District Court correctly observed, "The affidavits of the plaintiff, her husband, and a business acquaintance, submitted by the plaintiff in opposition to the defendants' motion, do not dispute this fact [that Defendants were performing official duties], nor do they appear to have been submitted for that purpose." Thus, Defendants were entitled to summary judgment on the force of their affidavits.[13]

## II.

### Suit Under Civil Rights Act

The District Court held (1) that the doctrine of immunity applies even to suit under the Civil Rights Act,[14] 42 U.S.C.A. § 1985, and (2) that § 1985 applies only where some of the defendants acted under color of *state* law.[15] But in *Norton* we expressly refrained from deciding either of these propositions.[16]

We likewise refrain from deciding what *Norton* left undecided. Instead, for purposes of this case, we shall assume that immunity is not a defense to actions under 42 U.S.C.A. § 1985 and that

13. Fed.R.Civ.P. 56(e): " * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations * * * of his pleading but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." See 3 Barron & Holtzoff, Federal Practice and Procedure §§ 1235, 1235.1 (supp. 1965).

Because of our view that the supporting and opposing affidavits require a summary judgment in these circumstances, it is unnecessary to decide whether it was proper for the District Court to consider appellant's failure to oppose removal pursuant to 28 U.S.C.A. § 1442(a) (1), supra note 6, as a ground for granting summary judgment. Apparently the District Court felt that if Defendants were acting "under color of office" for the purpose of removal, they were also acting within the "outer perimeter of the line of duty" for the purpose of immunity. But see Fowler v. Southern Bell Tel. & Tel. Co., supra.

It is also interesting to note, without making it a basis for our decision, the case of Preble v. Johnson, 10 Cir., 1960, 275 F.2d 275. The facts of that case are similar to the facts here, and there also the appellant contended that "the facts of record dealing with the respective scopes of duty were controverted, and that the cases were therefore not ripe for summary judgment." To this the Court said:

"This contention must rest squarely upon appellant's affidavits * * *. Certainly appellees' affidavits assert facts showing that the statements were absolutely privileged as being made in the line of duty. They therefore foreclose any genuine issue of fact unless * * * [appellant's] opposing affidavits affirmatively show that he is competent to testify that the statements were not made in line of duty. * * * The bulk of the averments in all of * * * [appellant's] affidavits * * * do no more than assert by way of conclusion 'that the controverted statements and publications were not given pursuant to defendant's official duties * * * and contains no allegation of fact or facts within the plaintiff's personal knowledge.' Controverted issues of fact are not thus raised."
275 F.2d at 279.

14. Citing Gibson v. Reynolds, 8 Cir., 1949, 172 F.2d 95, cert. denied, 337 U.S. 925, 69 S.Ct. 1170, 93 L.Ed. 1733. But see Birnbaum v. Trussell, 2 Cir., 1965, 347 F.2d 86. See generally The Doctrine of Official Immunity Under the Civil Rights Acts, 68 Harv.L.Rev. 1229 (1965).

15. Citing Koch v. Zuieback, 9 Cir., 1963, 316 F.2d 1; Hoffman v. Halden, 9 Cir., 1959, 268 F.2d 280.

16. 332 F.2d at 861, 863 n. 13. In Pierson v. Ray, supra, we noted that it is still uncertain whether immunity applies to suits under the Civil Rights Act and again refrained from deciding the question. 352 F.2d at 218.

it is unnecessary that any of the defendants have acted under the color of state law. These assumptions bring us to the essence of appellant's complaint.

Appellant alleged that the Defendants conspired to and did deny her equal protection of the law by discriminatory application of the Civil Service Commission's rules and regulations to her case, and further, that they conspired to and did deny her due process of law by adjudging her to be "incompetent" [17] without service of charges, without notice and opportunity to be heard, without opportunity to confront witnesses against her, and without the assistance of counsel. However, in her memorandum in opposition to Defendants' motion for summary judgment and in her argument on appeal, it became apparent that, relying on Greene v. McElroy, 1959, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 [Greene I], and Greene v. United States, 1964, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 [Greene II], appellant's principal complaint is that she was unconstitutionally denied a judicial hearing and the confrontation of witnesses.[18]

Assuming that this complaint can be asserted here [19] and that a con-

17. Of course, as this uncontradicted record reveals, no such adjudication was ever made. See note 7, supra. Although there are statements by Defendants in the record that appellant had a "personality disorder" ("persecution complex," "disrupting influence," "nervous," "chronic schizophrenic reaction, paranoid type," "instability," "inability to work with others"), all that Defendants finally determined was (1) that appellant's work was not "of an acceptable level of competence" (5 U.S.C.A. § 1121(a) (B)) [process (1)]; (2) that it would "promote the efficiency of such service" to suspend her (5 U.S.C.A. §§ 652(a), 863) [process (3)]; (3) that appellant was "totally disabled for useful and efficient service in the grade or class of position last occupied * * * by reason of disease or injury not due to vicious habits, intemperance, or willful misconduct" (5 U.S.C.A. § 2251(g)) [process (4)].

18. Appellant's Amended Complaint in the trial Court does nothing but repeat the language of all three subsections of 42 U.S.C.A. § 1985. Her allegation that the Commission's regulations had been discriminatorily applied to her was not further pressed at the trial Court and is not pressed here. Although the opportunity was afforded to do so, this contention was never urged on any of her administrative appeals. (See note 7, supra, processes 3, 4, and 5.) Indeed, there is not the slightest factual or legal support in this record for such an allegation. Finally, appellant has also abandoned the contentions that she was not given notice of the charges against her and was not assisted by counsel. Here the record clearly demonstrates that she was frequently advised of the reasons for the Defendants' adverse action (indeed, many of the statements which she contends constitute defamation are contained in written notices of these reasons, attached to her Complaint as exhibits and required by the regulations to be given, e. g., 5 CFR §§ 531.407(b) (1), 752.202(a), 752.-302(a)), and that she had the assistance of counsel at a very early stage in proceedings against her.

19. This is a big assumption. Appellant is not now seeking reinstatement to her job or restitution from the Government of wages lost because her retirement was procedurally or substantively defective. At least as to procedural defects, appellant could have raised her objections in a District Court suit against the Government officials involved to obtain restoration to her job or in a Court of Claims suit against the Government to obtain damages for an illegal discharge—assuming, that is, that she had properly exhausted administrative remedies. If the Defendants had failed to follow the procedure specified in the regulations (even though neither the statutes nor the constitution required such procedure), she would prevail in both forums. See, e. g., Williams v. Zuckert, 1963, 371 U.S. 531, 83 S.Ct. 403, 9 L.Ed.2d 486, on rehearing, 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136; Vitarelli v. Seaton, 1959, 359 U.S. 535, 79 S.Ct. 986, 3 L.Ed.2d 1012; Service v. Dulles, 1957, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403; Brown v. Macy, 5 Cir., 1965, 340 F.2d 115; Hanifan v. United States, Ct.Cl., 1965, 354 F.2d 358 [Dec. 17, 1965]; Begendorf v. United States, 1965, 340 F.2d 362, 169 Ct.Cl. 293; Kleinfelter v. United States, Ct.Cl., 1963, 318 F.2d 929; Shadrick v. United States, 1960, 151 Ct.Cl. 408. Or if the procedure followed, though consistent with the regulations, failed to comport with due-process requirements, she would like-

spiracy to deprive appellant of due process would support a suit for damages under § 1985,[20] we reject it on the merits. Appellant had no constitutional right to a judicial hearing with the opportunity to confront and cross-examine witnesses.

The starting point is Greene v. McElroy, supra. Appellant's reliance on this case as establishing a constitutional requirement of a hearing and confrontation prior to the discharge of a government employe is misplaced. *Greene I* decided only that *vis-a-vis* the Government and the employee in the absence of congressional or presidential authorization, considerations of due process prevent the Secretary of the Navy from revoking the security clearance of an engineer working on government projects without affording him the opportunity to confront and cross-examine the witnesses against him. Though constitutional considerations lurked in the background, the case was decided on the narrow ground of authorization.

Thus, consistent with the approach of the Supreme Court in *Greene I*, we must first determine whether the procedures followed by the Defendants have been authorized by Congress or the President. The Civil Service Retirement Act, 5 U.S. C.A. § 2251 et seq., does not provide for any hearing—yet alone a judicial one with confrontation and cross-examination of witnesses—in the case of disability retirement. The Civil Service Commission is authorized to enact proper regulations for carrying out the Act. 5 U.S. C.A. § 2266(a). It is given the power to adjudicate all claims under the Act, 5 U.S.C.A. § 2266(b), and its determination of disability "shall be final and conclusive and shall not be subject to review," 5 U.S.C.A. § 2266(c). The Regulations likewise provide that the Commission shall adjudicate all claims, 5 CFR §

---

wise prevail in both types of actions. See, e. g., Greene v. McElroy, supra; Greene v. United States, supra; Garrott v. United States, 1965, 340 F.2d 615, 169 Ct.Cl. 186. But appellant desired money damages for defamation and for conspiracy to deprive her of her civil rights. Unable under the Federal Tort Claims Act to obtain such redress from the Government, 28 U.S.C.A. § 2680(a), (h), Radford v. United States, 5 Cir., 1959, 264 F.2d 709, she here seeks to hold Defendants personally liable as Georgia tortfeasors and as § 1985 conspirators. In De Busk v. Harvin, supra, where similar relief was sought, we said:

"Considerations of procedural regularity are peculiarly inappropriate and premature for judicial inquiry on this review, and we expressly refrain from any comment thereon, since it appears from the record that the validity of appellee's action in dismissing appellant has been appealed administratively, and is still pending before the Civil Service Commission for final review. * * * We merely hold that, since appellant does not here seek reinstatement to his former job or otherwise attack the legality vel non of his discharge in a manner presently appropriate for judicial review, his petition seeking damages from appellees individually for their official act in discharging him is insufficient to state a claim for relief."

212 F.2d 143, 147. Cf. Wozencraft v. Captiva, supra, 314 F.2d at 288 ("Not here seeking direct judicial review of his discharge, cf., Greene v. McElroy * * * the Plaintiff resorted to an action for libel for his judicial recourse.").

20. Although she does assert in many ways that the regulations and statutes do not justify the actions of the Defendants, appellant does not contend that the Defendants failed to follow the applicable statutes and regulations in her case. To the contrary, she repeatedly disavows any purpose to rest her claim on violation of these statutes or regulations. Thus not complaining that she was denied equal protection of the law (see note 18, supra) —and, to be sure, not every failure to comply with administrative regulations would constitute such a denial—she attacks the regulations on due-process grounds. Holding that § 1985(3) applies only to conspiracies to deprive persons of equal protection, not to conspiracies to deny due process, many cases would make further inquiry unnecessary. See, e. g., Collins v. Hardyman, 1951, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253; Lewis v. Brautigam, 5 Cir., 1955, 227 F.2d 124, 55 A.L.R.2d 505; Whittington v. Johnston, 5 Cir., 1953, 201 F.2d 810, cert. denied, 346 U.S. 867, 74 S.Ct. 103, 98 L.Ed. 377; Joyce v. Ferrazzi, 1 Cir., 1963, 323 F.2d 931; Jennings v. Nester, 7 Cir., 1955, 217 F.2d 153, cert. denied, 349 U.S. 958, 75 S.Ct. 888, 99 L.Ed. 1281.

831.101(a), and although there is an appeal to the Commission from an adverse decision by the Bureau of Retirement & Insurance on an agency-initiated application for disability retirement, 5 CFR § 831.107(a), (c) (2), and each party is allowed to file a brief before the Commission, 5 CFR § 831.107(c), no hearing as such is provided for. The cases uniformly hold that no hearing is required under the Act or the regulations. Smith v. Dulles, supra; Murphy v. Wilson, supra; Cerrano v. Fleishman, 2 Cir., 1964, 339 F.2d 929, cert. denied, 1965, 382 U.S. 855, 86 S.Ct. 106, 15 L.Ed.2d 93; Rosenblum v. United States Civil Service Comm., W. D.Pa.1963, 224 F.Supp. 281.[21] We agree.[22]

This brings us to the constitutionality of the congressional and administrative decision to provide no hearing before retiring a federal employee for disability. The decisive case is Cafeteria and Restaurant Workers Union, etc. v. McElroy, 1961, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed. 2d 1230, where the Court reached the constitutional issue avoided in Greene I.[23] Finding that the applicable regulations and statutes authorized the removal, without a hearing or confrontation, of the identification badge of a civilian cafeteria employee on a military installation for security reasons, the Court held that this did not offend due process. Starting with the proposition that "the Fifth Amendment does not require a trial-type hearing in every conceivable case of government impairment of private interest." 367 U.S. at 894, 81 S.Ct. at 1748, 6 L.Ed. 2d at 1236, the Court weighed the private interest impaired with the government interest involved. The private interest impaired was the employee's loss of a job: she did not lose the right to practice her profession; she was free to work elsewhere; she was not, as in Greene I, bestowed a badge of disloyalty. The government interest was the "power * * * as proprietor, to manage the internal operation of an important federal military establishment." 367 U.S. at 896, 81 S. Ct. at 1749, 6 L.Ed.2d at 1236–1237. The Court recognized that "government employment, in the absence of legislation, can be revoked at the will of the appointing officer." Ibid.

When we similarly weigh the competing interests in this case, it is clear that no hearing was required. Appellant has not lost the right to work elsewhere as a secretary, retirement is certainly less drastic than outright discharge, and appellant's retirement for disability, even if interpreted as she does to be a finding of mental incompetence, casts no aspersion on her moral character or loyalty. And certainly the Government has the paramount interest of any employer in securing efficient employees. We, therefore, on the undisputed facts of this rec-

---

21. In none of these cases was the constitutional question of due process raised.

22. We have not discussed the other action taken against appellant (see note 7, supra) because it was merely a prelude to her disability retirement. Under Process (1) she clearly had no right to a hearing. In Process (4) the only action actually taken against her was suspension for 30 days, and the Lloyd-LaFollette Act § 6, 5 U.S.C.A. § 652, provides that in this case "no examination of witnesses nor any trial or hearing shall be required * * *." In any event, since her 30-day suspension was cancelled and she was reinstated with back pay, she can not complain of any denial of a hearing. In Process (5), if her forced leave-without-pay had been a disciplinary measure, she would have been entitled to a hearing before the Commission. See Exec. Order No. 10988, § 14, 27 Fed.Reg. 551 (Jan. 17, 1962), making § 14 of Veterans Preference Act, 5 U.S.C.A. § 863, applicable to all employees in competitive civil service; 5 CFR §§ 772.305, 771.214. But she did not appeal the Regional Appeals Examiner's decision declaring that the forced leave-without-pay was not a disciplinary measure.

23. See also Hannah v. Larche, 1960, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307, where the Court found that the statutes and regulations governing hearings by the Civil Rights Commission did not provide for confrontation, apprisal, and cross-examination. The Court held that the constitution does not require these accoutrements of a judicial hearing when the Commission is investigating, as distinguished from adjudicating.

ord interpreted most favorably to appellant, affirmatively hold that she has no constitutional rights which were abridged.

Affirmed.