SkeltoN, Judge,

concurring:
I am not satisfied with the result reached in this case and would dissent if there was any legal ground upon which I could do so. After careful consideration of the law and the facts and the very able opinion of the court, I have reluctantly concluded that there is nothing this court can do to right the wrong that has been done to the plaintiff.
However, I feel that I must point out some of the injustices in the case and the obvious weaknesses of the system by which plaintiff was disposed of.
It is apparent from reading the record in the case that the plaintiff became involved in a quarrel or controversy with two other women employees. The other two had a fight and during its progress, one of them kicked plaintiff on the leg. Plaintiff complained to her superiors, but the other two women who had the fight denied the altercation and vowed to get even with plaintiff for telling on them. The superiors believed the combatants and disbelieved plaintiff. However, the truth of the kicking incident was later verified by the fact that a surgeon in Johns Hopkins Hospital performed an operation to remove the bruise on plaintiff’s leg.
At this point, if the agency for which plaintiff worked had any complaint against her for this incident, it could *539 have preferred charges against her for cause. But such route would have entitled plaintiff to a hearing with witnesses and the right 'of cross-examination. The agency took the easy way out (for it) by selecting psychiatry as the way to settle the matter. By this route, plaintiff would not have a right to a hearing, and, for all practical purposes, no rights at all.
The agency filed an application to retire plaintiff on the ground that she was mentally disabled to perform her duties because of schizophrenic paranoia. Attached to the application were statements of two psychiatrists that were so ridiculous they would cause any reputable member of the profession to blush with embarrassment. One of them had examined plaintiff about a year before and found her to be without psychiatric difficulty. Neither had examined her since the present difficulty began. One of them based his adverse opinion on an alleged telephone conversation with plaintiff and on hearsay statements of various persons who were alleged to have observed plaintiff. The other expert said that he had tried to examine plaintiff but she had refused to see him and “her refusal to have this psychiatric examination is common place among patients with symptomatology of paranoid schizophrenia.” To say this statement is ridiculous, is to put it mildly. Her refusal to submit to such an examination by an agency psychiatrist under the circumstances was not credible evidence of paranoid schizophrenia, but on the contrary, was an indication of good judgment on her part. Probably nine out of ten perfectly normal people in her position would have refused such an examination under the conditions then existing.
This medical evidence, if you can dignify it by so referring to it, together with the unsworn statement of plaintiff’s supervisor, which contained all of the gossip, rumors, and statements that had been gathered together about plaintiff, formed the basis of the complaint against her and was attached to the application to retire her for mental disability.
But the significant bit of evidence that showed that the agency did not really believe plaintiff was mentally disabled, was the statement attached to the application from A. O. Fields, Personnel Officer of the United States Public Health *540 Service Hospital where plaintiff worked, which said, “This is to certify that attempts to place Mrs. Dorothea M. Scrog-gins with other Federal Hospitals in Baltimore were -unsuccessful.” In other words, this showed that they had been trying to get her a job in another hospital. They would not have done this if they had thought she was mentally disabled from doing work. This is proof that all they really wanted to do was to get rid of plaintiff.
It was upon this kind of evidence that the agency determined on June 14, 1965, that plaintiff was totally disabled and she was retired. At that time, the agency had no report of any psychiatrist or doctor who had examined plaintiff and who said she was disabled. On the other hand, plaintiff had furnished a statement of Dr. Scorgie of Johns Hopkins Hospital, who said she was “fit for any kind of duty compatible with her age,” and a statement of Dr. Sutley of Baltimore who said “she was in good control of her mental faculties and not considered to be mentally ill.” The agency paid no attention at all to these recent medical reports.
Later on, plaintiff agreed to a psychiatric examination by a CSC selected psychiatrist named H. D. Shapiro. He reported that she had paranoid reaction and was disabled from doing her work. This report doomed the plaintiff, although she later obtained reports from two other psychiatrists saying there was nothing wrong with her mentally.
The system used here and used in the case of Lula A. McGlasson v. United States, post, at 542, decided this day (in which I dissented) is a most unsatisfactory and unjust way to proceed against a government employee whose services are no longer desired. There are no regulations establishing a procedure, although the CSC has the authority to promulgate them. 5 U.S.C. § 8347(a).[1] The employee is not entitled to a hearing (according to the decided cases). There are no witnesses nor any right of cross-examination. Hearsay, gossip, rumors, and everything else can be and probably are considered. The employee is not represented and does not even know what is being considered against him or *541 her. In most instances, the employee is helpless to do anything. It can safely be said that under this system, when an agency begins to look at an employee through “psychiatric-schizophrenic-paranoid colored glasses” and sets the retirement machinery in motion against him, he might as well “throw in the towel,” because he does not have a chance to avoid retirement. Such a system should not be allowed to prevail. The court has commendably referred to the proposed procedures being contemplated by the CSC in cases of this kind which would eliminate many of the objections to the present system. I understand that such proposal would afford the employee a hearing with confrontation of witnesses and the right of cross-examination, and cases would be decided on substantial evidence, with all reasonable doubt resolved in favor of the employee. Such a procedure would be highly desirable. It is hoped that this proposal will be adopted by the CSC without delay.
Our court, in its opinion, inferentially rejects plaintiff’s contention that a disability retirement for psychiatric reasons is a “badge of infamy” by citing with apparent approval the holding in Chafin v. Pratt, 358 F. 2d 349, 357 (5th Cir. 1966), cert. denied, 385 U.S. 878, which states that “* * * a finding of mental incompetence casts no aspersion on her moral character or loyalty.” This statement is correct as far as it goes, but it misses the mark in our case. Neither the morals nor loyalty of plaintiff is involved in the slightest degree. The plaintiff is in reality complaining, by her “badge of infamy” charge, that a disability retirement of an employee by a government agency for psychiatric reasons creates a “stigma” against the employee that can never be outgrown nor overcome. I agree with the plaintiff. Certainly no government agency would likely hire an employee who had been so retired, and it is unlikely any other employer with desirable employment would do so. We might as well be practical about it. A charge and a decision of mental disability against an employee does as an actual fact cast a stigma on the employee. Consequently, such a charge should never be lightly or carelessly made, and, when made, the employee should be given the right to protect himself *542 and bis job in a procedure that guarantees him a trial with all the rights and privileges attendant upon such a trial. It is hoped that such a procedure will soon be established.
Finally, notwithstanding the fact that I feel that plaintiff has been done an injustice here, there is nothing this court can do. The Congress has said that the action of the CSC is final and not subject to review, 5 U.S.C. § 8341 (c). We can overturn a CSC decision only in those few instances where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination. Gaines v. United States, 158 Ct. Cl. 497, 502 (1962), cert. denied, 371 U.S. 936 (1962). None of these exceptions exist here.
This case differs from that of Lula A. McGlasson v. United States, supra, because in that case there was no evidence that the plaintiff was totally disabled from doing her work. In the case at bar, there was evidence of total disability of the plaintiff in the form of Dr. Shapiro’s report. We cannot overturn the decision of the CSC based on that report, even if we would have reached a different decision if we had tried the case. Ellmore v. Brucker, 236 F. 2d 734, 736, cert. denied, 352 U.S. 955 (1956); Gaines v. United States, supra.
Durfee, Judge, and CollíNS, Judge, join in the foregoing concurring opinion.

 This opinion was prepared prior to the promulgation by the CSC of its new disability retirement regulations to be effective July 1, 1968. See 33 F. Reg. 7715-17 (May 25, 1968).